**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 8, 2017**

# In the Court of Appeals of Georgia

A16A1575. IN THE INTEREST OF E. T., a child.

BRANCH, Judge.

Following his adjudication of delinquency for aggravated assault, aggravated battery, and criminal attempt to commit a felony, E. T. appeals, contending the trial court improperly allowed the victim to testify via two-way video conference during the adjudicatory hearing. He also contends the trial court improperly amended the order of disposition and improperly merged certain charges. For the reasons that follow, we hold that the trial court erred by allowing the victim to testify via video conference and that a new trial is required.

"On appeal of an adjudication of delinquency, the appellate court determines whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the acts charged

beyond a reasonable doubt." *In Interest of L. J.*, 337 Ga. App. 653, 653 (788 SE2d 531) (2016) (citations omitted).

E. T. does not challenge the sufficiency of the evidence, but we find it sufficient to support the adjudication. The record shows that on June 30, 2015, R. R., a long-time friend of E. T.'s, persuaded another friend, the victim, to come along with R. R. on a walk to a subdivision where supposedly, there were girls to meet. At that subdivision, and shortly after R. R. had been engaged in texting someone else, a person wearing a mask and holding a gun appeared from behind a truck and attempted to rob the victim using the gun. Because the mask had large holes for the eyes, nose, and mouth, the victim immediately recognized E. T., who he had met previously through R. R., as the robber. The victim later identified E. T. during a pre-trial photo lineup and at trial as the robber. When a struggle for the gun ensued, the victim was shot and suffered severe injuries, including loss of all or part of several internal organs. Meanwhile, E. T., age 15 at the time, fled the scene but moments later sent R. R. a text "to delete everything." R. R. made several inconsistent statements to the police: in one, he admitted that E. T. had been present before and during the robbery but that he had run away; in a separate statement, R. R. said that it was possible that E. T. had been the shooter. R. R. also gave the investigating officer a

2

description of the shooter that was different from E. T.'s general description. But R. R. did not testify at the adjudicatory hearing.

The victim, who was age 18 at the time of the incident, testified that he was in a hospital in Miami awaiting a transplant of his entire digestive system. He explained that he received liquid nutrition via an intravenous tube. But he told the court that he was "feeling perfectly fine" at the end of his testimony, and he remained connected to the video conference after his testimony concluded. The victim's initial treating physician in Savannah testified to the severity of the victim's injuries (he lost all of his small intestine and one kidney and half of his stomach, large intestine, and pancreas); the doctor also testified about the effort to save the victim's life and to the fact that he was awaiting a transplant in a Miami hospital. The doctor added that the victim could receive his IV therapy outside of the hospital.

On August 6, 2015, the State filed a delinquency petition in which E. T. was charged with aggravated assault with a deadly weapon, aggravated battery by maliciously causing bodily harm by rendering the victim's intestines useless, and criminal attempt to commit a felony (armed robbery); the indictment asserted that

each charge was a class A designated felony.[1] Following the adjudicatory hearing, at which the victim testified via video conference from a hospital in Miami, the juvenile court adjudicated E. T. delinquent on all three counts; the court also found that the aggravated battery conviction merged into the conviction of aggravated assault. Two days later, however, the juvenile court amended the adjudication sua sponte and without notice to either party, to show that E. T. had committed aggravated assault *with intent to rob* rather than with a deadly weapon as alleged in the indictment; the court reentered the remainder of the original adjudication, including merging aggravated battery into aggravated assault. The court also ordered that the child remain in a youth detention center pending the disposition hearing, which was set for October 15, 2015, but later continued to November 10, 2015. Following the disposition hearing, at which the victim and his mother made statements via video conference from the Miami hospital where the victim was still awaiting a transplant,

---

[1] Petitions alleging delinquency must state whether the child "is being charged with a class A designated felony act or class B designated felony act." OCGA § 15-11-522 (5); *In the Interest of J. H.*, 335 Ga. App. 848, 851 (783 SE2d 367) (2016). See also OCGA § 15-11-2 (12) & (13) (defining class A and class B designated felony acts). When a child is adjudicated to have committed a class A designated felony act, the order of disposition may include placing the child in restrictive custody for up to 60 months; the maximum for a class B designated felony act is 36 months. OCGA § 15-11-602 (c).

the court entered an order of disposition requiring E. T. to serve 48 months in restrictive custody, with credit for time spent in secure detention, followed by 12 months of intensive supervision. E. T. appealed to this Court.[2] In addition to asserting that the trial court erred by allowing the video-conference testimony, E. T. contends the court erred by amending the order of disposition to reflect the commission of aggravated assault with intent to rob rather than with a deadly weapon as charged. The State agrees and urges this Court to remand for resentencing on the correct charge. E. T. also contends the trial court erred by not merging criminal attempt at armed robbery with aggravated assault with intent to rob. The State finds issue with a different aspect of the trial court's decision on what charges to merge.

1. In three enumerations of error, E. T. contends that the trial court's decision to allow the victim to testify via video conference violated Rule 2.7 of the Uniform

---

[2] We initially transferred this appeal to the Supreme Court on the ground that the issue presented involves construction of the right to confrontation as found in both the state and federal constitutions. See *Atlanta Independent School System v. Lane*, 266 Ga. 657, 657 (1) (469 SE2d 22) (1996); 1983 Ga. Const., Art. VI, Sec. VI, Par. II. The Supreme Court returned the appeal to this Court on the ground that this Court has jurisdiction to address issues involving settled principles of constitutional law.

Rules for the Juvenile Court (URJC)[3] and his right to confrontation as found in the Constitution of Georgia and the United States Constitution.

The record shows that initially, the adjudicatory hearing was scheduled for August 28, 2015. But on that day, the State requested that it be allowed to present the victim's testimony via Skype from a hospital in Miami, and E. T. objected. The court therefore ordered that the hearing be continued until September 2, 2015, so that the State and E. T. could determine whether they could depose the victim. On September 1, 2015, however, the State filed a notice of intent to present the victim's testimony by video conference or, in the alternative, that the victim's testimony be taken by deposition in advance of trial. In support, the State asserted that the victim was hospitalized, awaiting a multi-organ transplant in Miami; that his injuries "left him so infirm as to afford reasonable grounds to believe that he will be unable to testify in person as a witness at a criminal trial or proceeding"; and that his "long-term prognosis" was "speculative." The State added that the victim was a material witness

[3] The Council of Juvenile Court Judges, comprised of "[a]ll of the judges and associate judges of the courts exercising jurisdiction over children," is authorized to "promulgate uniform rules and forms governing procedures and practices of the courts." OCGA § 15-11-58 (a) & (b); see also Ga. Const. Art. VI, § IX, ¶ I. And in 1985, the Council promulgated the Uniform Rules for the Juvenile Courts, which have been modified from time to time since then. See Ga. R. Unif. Juv. Ct. Rule 1.1 et seq.

and that his testimony and identification of the defendant "are crucial to the State's case." The State indicated that it preferred the video conference option "to avoid the unnecessary expense, delay, and inconvenience of traveling to Miami, Florida," but that it was willing to consent to testimony by deposition "if said deposition can be transacted by video-conferencing." The State explained that even with a deposition, it was concerned for the victim's safety in the presence of the defendant:

> [U]nless the defendant waives in writing his right to be present, the State has safety concerns about transporting the defendant to and from Miami, Florida, and [safety concerns about the defendant's] physical presence in the victim's hospital room where the victim is lying helpless in bed, connected to medical equipment necessary to keep him alive, and is physically unable to run or defend himself.

E. T. responded by objecting to the video conference option on the same grounds raised on appeal; E. T. did not object to the deposition option.

Based on the representations of the State and without conducting an evidentiary hearing on the motion, the trial court held that it had the discretion under URJC Rule 2.7-2 to allow video conference testimony upon a showing of good cause, that good cause had been shown, that the child's right to confrontation could be protected if the procedure used preserved the essence of effective confrontation, and that the same

7

rule provided such a procedure. The court therefore granted the State's motion to present the victim's testimony via video conference and held that the request for testimony via deposition was therefore moot. At the beginning of trial, E. T. reiterated his objections. At trial, the prosecutor, the defense, and the victim each had a computer monitor in front of them that allowed each to see, hear, and communicate with each other simultaneously, and all participants could observe each other's demeanor and non-verbal communications. But it is unclear whether anyone was in the hospital room with the victim during his testimony. The technology being employed was named WebEx, which is a program for transmitting two-way live video; the picture on at least one of the screens would change based on who was speaking, and the live video was recorded for the record.

(a) E. T. first contends that the court's decision to allow the victim to testify via video conference was prohibited by the Uniform Juvenile Court Rules. Both parties contend there is an inconsistency between in Rule 2.7-2 (A) and (C). We disagree.

Like the construction of statutes, the construction of court rules is a question of law for the courts. See, e.g., *Jones v. State*, 276 Ga. 171, 172 (575 SE2d 456) (2003) (construing the Uniform State Court Rules). The plain language of subsection

8

(A) allows a Juvenile Court to conduct "any Juvenile Court matters" by video conference with two exceptions, including formal adjudicatory delinquency hearings:

> At the discretion of the court, any Juvenile Court matters may be conducted by video-conference with the following exceptions: 1. Formal adjudicatory hearings on Petitions alleging the delinquency or unruliness of a child; and 2. Hearings alleging the violation of a juvenile court protective order which may result in the loss of liberty of the person alleging to have violated the protective order.

Thus, under these exceptions, the court may not conduct the actual hearing itself by video conference but instead must hold the hearing in court.

On the other hand, Rule 2.7-2 (C) provides that "In *any pending matter*, a witness may testify via video-conference." (Emphasis supplied). Thus, subsection (C), which pertains to witnesses rather than matters or hearings, gives a court conducting "any pending [juvenile court] matter" — without stating any exceptions — the discretion to allow individual witnesses to testify via video conference. Although subsection (C) (2) provides that parties may object to a notice of video conference testimony and that "[i]n a delinquency or unruliness *matter*, such objection by the child *shall be sustained*," (emphasis supplied), subsection (C) (2) goes on to provide that "such objection shall act as a motion for continuance and shall

9

toll the applicable time limits," and subsection (C)(3) provides that the juvenile court "may modify these requirements upon a showing of good cause." Further, "[t]he discretion to allow testimony via video-conference shall rest with the judge." Id. Thus, the continuance gives the State time to determine whether good cause for a modification exists, to make arrangements to bring the witness to court, or to preserve the witness's testimony by deposition. See OCGA § 15-11-17 (b) (providing that juvenile court hearings be conducted in accordance with Title 24, except as otherwise provided); OCGA § 24-13-130 (providing for taking of a material witness's testimony by deposition).

As shown above, the plain language of Rule 2.7-2 gave the juvenile court in the present case the discretion to allow the victim to testify via video conference upon a showing of good cause. Because E. T. does not challenge the finding of good cause, we conclude that the trial court acted within its discretion under that rule. Whether that rule protects the defendant's constitutional rights is another question.

(b) E. T. contends that allowing the victim to testify via video conference violated his right to confrontation as found in Art. I, Sec. I, Par. XIV of the Constitution of Georgia and the Sixth and Fourteenth Amendments to the United States Constitution. "The admission of testimony by two-way video conference

10

presents a mixed question of law and fact; therefore, we review de novo [the appellant's] claim that [his] Sixth Amendment rights were violated." *United States v. Yates*, 438 F3d 1307, 1311 (I) (11th Cir. 2006) (citation omitted). We begin with the Sixth Amendment.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.'" *Maryland v. Craig*, 497 U. S. 836, 844 (II) (110 SCt 3157, 111 LE2d 666) (1990). This right applies in a Georgia deprivation proceeding.[4] "The combined effect of [the four] elements of confrontation — physical presence, oath, cross-examination, and observation of demeanor by the trier of fact — serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is

---

[4] "[W]here the proceedings may result in the incarceration of the juvenile offender, certain due process requirements must be observed." *Florida Publishing Co. v. Morgan*, 253 Ga. 467, 469 (a) (322 SE2d 233) (1984), citing *In re Gault*, 387 U. S. 1 (87 SCt 1428, 18 LE2d 527) (1967); see also *In Interest of C. M. M.*, 244 Ga. 787, 787 (262 SE2d 103) (1979) (juvenile court delinquency hearings must measure up to the "essentials of due process and fair treatment"). Thus, as this Court has explained, a juvenile charged with delinquency is entitled to "the right to adequate notice of the charges, appointment of counsel, the constitutional privilege against self-incrimination, and the right to confront opposing witnesses." *In Interest of S. H.*, 220 Ga. App. 569, 571 (469 SE2d 810) (1996).

11

reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." Id. at 846 (II) (citation omitted).[5] And, the Supreme Court "[has] recognized, for example, that face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." Id. (citation omitted).

Although in general "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," the Supreme Court has explained that it has "never held . . . that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Craig*, 497 U. S. at 844 (II) (citations omitted; emphasis in original). Rather, the majority held, "in certain narrow circumstances, competing interests, if 'closely examined,' may warrant dispensing with confrontation at trial." Id. at 848 (II) (citations and punctuation omitted). In what is now referred to as the *Craig* test, the Supreme Court held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation

---

[5] In *Craig*, a 5-4 decision, Justice Scalia, joined by Justices Brennan, Marshall, and Stevens, dissented, arguing that the majority's reasoning was erroneous "because the Confrontation Clause does not guarantee reliable evidence; it guarantees specific trial procedures that were thought to assure reliable evidence, undeniably among which was 'face-to-face' confrontation." *Craig*, 497 U. S. at 862, J. Scalia, dissenting.

at trial only where denial of such confrontation is necessary to further an important

public policy and only where the reliability of the testimony is otherwise assured."[6]

---

[6] Although *Craig* involved the use of one-way video conferencing, the 11th Circuit has held, en banc, that the *Craig* test applies to two-way video conference testimony as well, and most other federal circuit courts that have addressed the issue agree. *Yates*, 438 F3d at 1313, 1315 ("The Sixth Amendment's guarantee of the right to confront one's accuser is most certainly compromised when the confrontation occurs through an electronic medium."), and cases cited therein; see also *United States v. Bordeaux*, 400 F3d 548, 554 (I) (8th Cir. 2005) ("It is true that a two-way closed-circuit television creates an encounter that more closely approximates a face-to-face confrontation than a one-way closed-circuit television does because a witness can view the defendant with a two-way system. But two-way systems share with one-way systems a trait that by itself justifies the application of *Craig:* the "confrontations" they create are virtual, and not real in the sense that a face-to-face confrontation is real."). But see *United States v. Gigante*, 166 F3d 75, 81 (I) (2d Cir. 1999) (*Craig* test not required for two-way video conference testimony; rather, "[u]pon a finding of exceptional circumstances, . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice."); *United States v. Benson*, 79 Fed. Appx. 813, 821 (II) (5) (6th Cir. 2003) (following *Gigante*). We will therefore apply the *Craig* test in this case involving two-way video conferencing.

Although it is not controlling, we also note the following:

In 2002, the Advisory Committee on the Criminal Rules suggested a revision to Federal Rule of Criminal Procedure 26 that would have allowed testimony by means of two-way video conferencing. Thereafter, the Supreme Court transmitted to Congress proposed amendments to the Federal Rules of Criminal Procedure. The Court declined to transmit the proposed revision to Rule 26 that would have allowed testimony by two-way video conference. Justice Scalia filed a statement explaining that he shared "the majority's view that the Judicial Conference's proposed Fed.

13

Id. at 850 (II). The Court held that "[t]he requisite finding of necessity must of course be a case-specific one[.]" Id. at 855 (III). Under *Craig*, it is the State's burden to make an adequate showing of necessity during a required evidentiary hearing. Id.[7]

In *Craig*, the Supreme Court held that the Sixth Amendment did not categorically prohibit a child sexual abuse victim from testifying by one-way closed circuit television in accordance with a Maryland statutory procedure.[8] Rather, based

Rule Crim. Proc. 26 (b) is of dubious validity under the Confrontation Clause of the Sixth Amendment to the United States Constitution." Order of the Supreme Court, 207 FRD 89, 93 (2002). He remarked that the proposed amendments were "contrary to the rule enunciated in *Craig*" in that they would not limit the use of remote testimony to "instances where there has been a 'case-specific finding' that it is 'necessary to further an important public policy.' Id. (citation omitted). Rule 26 was not revised to allow such testimony."

*Yates*, 438 F3d at 1314-1315 (III) (A).

[7] We also agree with the Eleventh's Circuit's conclusion that the United States Supreme Court's opinion in *Crawford v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004), does not alter the need to apply the *Craig* test in this case. See *Yates*, 438 F3d at 1314, n. 4.

[8] The procedure was described by the Supreme Court as follows:
Once the procedure is invoked, the child witness, prosecutor, and defense counsel withdraw to a separate room; the judge, jury, and defendant remain in the courtroom. The child witness is then examined

14

on expert testimony about the effect on the individual child victims of testifying in the presence of the accused under the circumstances of that case, the court found that the testimony was necessary to further the important public policy of protecting the physical and psychological well-being of those child abuse victims. *Craig*, 497 U. S. at 853 (III). The Supreme Court found that the trial court properly heard evidence regarding the need for the closed circuit testimony and made a case-specific finding that the use of one-way closed circuit television was necessary to further the public interest stated above. Id. at 855-856 (III). The Supreme Court also found that Maryland's statutory procedure for the introduction of one-way closed circuit testimony adequately safeguarded the reliability of that evidence. Id. at 851-852 (III).[9]

---

and cross-examined in the separate room, while a video monitor records and displays the witness' testimony to those in the courtroom. During this time the witness cannot see the defendant. The defendant remains in electronic communication with defense counsel, and objections may be made and ruled on as if the witness were testifying in the courtroom.

*Craig*, 497 U. S. at 840-842 (I).

[9] Like *Craig*, most Georgia criminal cases applying *Craig* involve whether a trial court may take steps to protect a child victim of sexual abuse from having to see the defendant while the child victim testifies in court based on the state's interest in protecting the physical and psychological well-being of child abuse victims. See *In the Interest of B. H.*, 295 Ga. App. 297, 300 (5) (671 SE2d 303) (2008) (considering

15

In the case before us, the trial court did not hold an evidentiary hearing or examine whether having the victim testify via video conference was necessary to further an important public policy. The trial court determined only that, based on the State's representations, good cause for a video conference had been shown under URJC Rule 2.7.2 and that the defendant's right to confront the witnesses against him could be safeguarded as long as the technical standards of video conferencing found

whether trial court in a deprivation case erred by "requiring the father [who was accused of sexually abusing the victim] to view [the victim's] courtroom testimony from a television monitor in a separate room" in order to protect the child from the trauma of testifying in the father's presence where the trauma would impair the child's ability to communicate); *Harris v. State*, 269 Ga. App. 316, 319 (3) (604 SE2d 565) (2004) (child victim of sexual abuse allowed to testify with a blackboard placed in a position where the defendant could see the witness and the jury and the child could see the defendant, "though not as easily as she might have without the blackboard"); see also *Ortiz v. State*, 188 Ga. App. 532, 533 (2) (374 SE2d 92) (1988) (a pre-*Craig* case where "trial court allowed the witness chair to be turned at an angle so the [child victims of sexual abuse] would not be forced to directly face [the defendant]"). Other cases involve whether a juvenile judge may take steps to accommodate a child witness' fears in testifying in the presence of allegedly abusive parents in cases involving child custody and the termination of parental rights. See, e.g., *In Interest of C. W. D.*, 232 Ga. App. 200, 202, 210 (5) (501 SE2d 232) (1998) (children permitted to testify via closed circuit television where they had allegedly suffered physical, psychological, and emotional abuse by parent); *In the Interest of B. G.*, 225 Ga. App. 492, 493-494 (1) (484 SE2d 293) (1997) (in a case involving the termination of parental rights, the trial court erred by excluding the mother from the courtroom during her children's testimony because the court failed to "make an evidentiary finding that the child would be substantially traumatized by the event and that the child's welfare compels a limitation on the party's right to confront the child witness") (citation omitted).

16

in that rule were met.[10] But that rule's standards do not address public policy

concerns. Rather, they are related to *Craig's* concern regarding the reliability of the

evidence, the second prong of the *Craig* test. And even if the rule's technical

standards were sufficient to satisfy the reliability prong of the *Craig* test, which we

do not decide here, "a mere finding that evidence is reliable is insufficient to

outweigh a defendant's confrontation rights if the denial of confrontation is not

necessary to further an important public policy." *Brumley v. Wingard*, 269 F3d 629,

---

[10] Subsection (E) of Rule 2.7.2 provides:

Technical Standards. Any video-conferencing system utilized under this rule must conform to the following minimum requirements: 1. All participants must be able to see, hear, and communicate with each other simultaneously; 2. All participants must be able to see, hear, and otherwise observe any physical evidence or exhibits presented during the proceedings, either by video, facsimile, or other method; 3. Video quality must be adequate to allow participants to observe each other's demeanor and nonverbal communications; and 4. If the proceeding is one from which the general public may not be excluded as provided by O.C.G.A § 15-11-78 (b), the location from which the judge is presiding shall be accessible to the public to the same extent as such proceeding would if not conducted by video conference. In any such case, the court shall accommodate any request by interested parties to observe the entire proceeding.

17

643, II (B) (1) (b) (6th Cir. 2001) (footnote omitted). Also, for the reasons that follow, we cannot conclude that the "good cause" portion of the Rule 2.7.2 test can, in this case, substitute for the first part of the *Craig* test — that video-conference testimony by the victim was "necessary to further an important public policy," especially when the court had another option, namely a face-to-face videotaped pretrial deposition.

First, the State failed to articulate an important public policy, and therefore we have no basis to conclude that the trial court equated good cause under Rule 2.7.2 with any important public policy. See *United States v. Jacobs*, 97 F3d 275, 282 (1) (8th Cir. 1996) ("Mere speculation [as to the state's public policy interest in requiring the defendant to cross-examine a witness by telephone] is insufficient to justify abridgement of defendant's constitutional right to confront his accuser face-to-face in the jury's presence."). Second, the State argued that good cause was shown because (1) the victim was too infirm to travel to Savannah to testify; (2) the victim's testimony was crucial to the case; and (3) video conference testimony was more economical than the option of taking the victim's testimony via a pretrial deposition. Yet the fact that video conference testimony may be more economical than face-to-face video deposition testimony does not justify a departure from the rules of confrontation. See *Brumley*, 269 F3d at 644, II (B) (1) (b) ("administrative

18

convenience and budgetary concerns" do not outweigh a defendant's Sixth Amendment rights). And even if we were to read the trial court opinion as saying that there is an important public policy to allow video testimony of critical witnesses who are physically unable to travel to court during a reasonable period of time for conducting a juvenile court adjudicatory hearing, see *Horn v. Quarterman*, 508 F3d 306, 320 (II) (A) (5th Cir. 2007) ("protection of seriously ill witnesses may give rise to the type of necessity required under *Craig* to permit testimony by way of closed-circuit television") (citation omitted), in this case, the trial court did not conduct a hearing or take any evidence regarding the victim's specific medical circumstances before deciding whether to permit video testimony. By contrast in *Horn*, the Fifth Circuit noted that the trial court considered evidence and conducted a telephone conference with the witness's doctor in Ohio regarding the witness's illness and inability to travel before overruling Horn's objection to the witness's testimony via video conference. Id.[11]

---

[11] *Horn* was a habeas case decided under a different standard, which makes that and other habeas cases distinguishable. Id. at 312 (I) ("There are two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim that was adjudicated on the merits in state court: if the state court decision was either 'contrary to clearly established Federal law, as determined by the Supreme Court' or 'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court'.") (citation omitted). See also *Harrell v.*

19

Although the seriousness of the victim's injuries, as represented by counsel for the State, was not disputed, the court did not obtain specific evidence as to whether the victim could travel while awaiting a transplant, whether he might have been able to testify in court within a reasonable amount of time in the future, or whether, as more fully addressed below, a video deposition in Miami would have been appropriate. The State's representation that there were "reasonable grounds to believe that he will be unable to testify in person" may be true, but it was not supported by

*Butterworth*, 251 F3d 926 (11th Cir. 2001). In *Harrell*, a habeas case, the Eleventh Circuit held that the following findings of the trial court were not contrary to nor an unreasonable application of federal law:

> The Court began by recognizing public policy reasons justifying an exception to face-to-face confrontation. First, the witnesses lived beyond the subpoena power of the court and thus there was no way to compel them to appear in court. The Court found this to be an important consideration, because it was "clearly in the state's interest to expeditiously and justly resolve criminal matters that are pending in the state court system." Second, there was evidence that one of the witnesses was in poor health and could not travel to this country. Finally, the testimony of these two witnesses was "absolutely essential to this case." The Court concluded that "these three concerns, taken together, amount to the type of public policy considerations that justify an exception to the Confrontation Clause."

Id. at 929 (I) (citations and punctuation omitted).

20

any medical testimony. Many victims of violent crimes require hospitalization and significant periods of rehabilitation as a result of their injuries, which can make it difficult for victims to testify in court. But the simple fact that a victim has medical issues or is hospitalized for a period of time does not mean that the State automatically can present the testimony of any such victim via video conference. Rather, under *Craig*, the Sixth Amendment requires a court to take evidence and make a case-specific determination that a video conference satisfies an articulated important public policy. In this case, the trial court failed to do so.

For example, as stated by the Eighth Circuit in a case involving a witness with medical issues,

> the [trial] court must determine the necessities of the specific case by weighing the importance of the absent witness for the case; the nature and extent of the cross-examination; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counseling against delay.

*Jacobs*, 97 F3d at 282 (2) (citations and punctuation omitted) (holding that trial court's decision to require defense to complete cross-examination of important witness via telephone due to her pregnancy was a violation of defendant's right to

confrontation, although harmless under the circumstances); see also *Stoner v. Sowders*, 997 F2d 209, 212-213 (6th Cir. 1993) ("When the government is claiming witness unavailability due to illness, the specific inquiry must focus on both the severity and duration of the illness. The court must inquire as to the specific symptoms of the illness to determine what tasks the patient is able to perform, and the court must determine whether there is the probability that the illness will last long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed.") (citation and punctuation omitted).

Also, although the Juvenile Code requires that juvenile delinquency matters proceed on a fast-track schedule, see OCGA 15-11-582, the juvenile court is authorized to grant continuances for good cause, see OCGA § 15-11-478, which, if the confined accused is so inclined, can include protection of his Sixth Amendment right to confront the witnesses against him. "[A] continuance under the juvenile court rules is mandatory when the lack thereof will result in injury or prejudice to the defendant." *In Interest of D. W.*, 232 Ga. App. 777, 779 (1) (b) (503 SE2d 647) (1998), citing *Sanchez v. Walker County Dept. of Family & Children Svcs.*, 237 Ga. 406, 410 (229 SE2d 66) (1976).

Moreover, an alternate procedure was available to the trial court that would have protected E. T.'s right to confrontation — a video-taped deposition in Miami with E. T. present. OCGA § 24-13-130 provides that upon motion of a party, the trial court may order that the testimony of a material witness may be taken by deposition if

> it appears to the satisfaction of the court that the testimony of the witness is material to the proceeding and the witness: (1) Is in imminent danger of death or great bodily harm; . . . [or] (4) Is so sick or infirm as to afford reasonable grounds to believe that such witness will be unable to testify as a witness at a criminal trial or proceeding.

A deposition provides "the opportunity to be present at the deposition and thus an opportunity for physical face-to-face confrontation." *Yates*, 438 F3d at 1314 (III) (A). As held in *Yates*,

> under the circumstances of this case (which include the availability of a . . . deposition), the prosecutor's need for the video conference testimony to make a case and to expeditiously resolve it are not the type of public policies that are important enough to outweigh the Defendants' rights to confront their accusers face-to-face.

Id. at 1316 (III) (A) (case involving two witnesses from Australia who were not willing to travel to the United States to testify in a criminal trial).

23

In sum, the trial court erred by failing to apply the *Craig* test to the specific circumstances raised in this case. Further, an alternate procedure was available whereby a face-to-face confrontation could have been accomplished. *Yates*, 438 F3d at 1315-1316 (III) (A) (trial court erred by allowing two-way video conference testimony in part because the court failed to hold hearing to consider evidence of necessity for video conference testimony and instead relied on the government's assertions, and failed to make case-specific findings of necessity); *State v. Thomas*, 376 P3d 184, 195 (II) (B) (3) (NM 2016) (where court "did not conduct an evidentiary hearing or enter any findings on the [*Craig* test] . . . the admission of remote testimony violated Defendant's right to confrontation"). As for the State's concern for the victim's safety from E. T. during such a deposition, the State did not provide any factual basis for such a concern, and security measures are certainly available to alleviate routine security matters.

We therefore hold that the trial court erred by failing to apply the *Craig* test before allowing the victim to testify via two-way video conference. Given that the trial court itself admitted that the victim's testimony was the critical factor used to identify E. T. as the assailant, we cannot conclude that the error was harmless. We therefore vacate E. T.'s adjudication and remand for a new adjudicatory hearing. The

remaining enumerations of error are not likely to recur and therefore need not be addressed.

*Judgment vacated and case remanded with direction. McFadden, P. J., and Bethel, J., concur*.