**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 4, 2018**

# In the Court of Appeals of Georgia

A18A1193. PHILLIPS v. PHILLIPS.

BARNES, Presiding Judge.

Robert Phillips (Husband) and Melinda Phillips (Wife) were married in December 1993, and are the parents of four children. After nearly 20 years of marriage, Husband filed for divorce in June 2013. The trial court conducted a bench trial at which Husband and Wife testified. In July 2015, the court entered a "Final Judgment and Decree" ("final judgment") dissolving the marriage.[1] Among other

---

[1] Husband filed a notice of appeal from that judgment, but the Georgia Supreme Court dismissed his appeal because the issue of attorney fees remained pending below. See Case No. S17A0771 (dismissal order entered on February 3, 2017). Upon entry of a ruling on that issue in June 2017, Husband procured this discretionary appeal. See OCGA § 5-6-35 (a) (2) (providing that appeals from judgments or orders in divorce, alimony, and other domestic relations cases are taken by grant of discretionary application). This Court has subject matter jurisdiction over "[a]ll divorce and alimony cases" in which a notice of appeal or application to appeal is filed on or after January 1, 2017. See Appellate Jurisdiction Reform Act of 2016,

things, the final judgment granted Wife primary physical custody of the two minor children, ordered Husband to pay child support, and divided real and personal property. Finding fault with aspects of these three rulings, Husband appeals.[2] For reasons explained below, we affirm in part, vacate in part, and remand the case for proceedings not inconsistent with this opinion.

1. As an initial matter, we note that the appellate record lacks transcripts of certain evidentiary hearings.

In the final judgment, the trial court recounted that temporary hearings had been held in this case on July 12, 2013 and August 9, 2013; and that "[t]he parties stipulated that the evidence presented during the temporary hearing could be considered by the [c]ourt for purposes of determining the final issues in the case, and evidence was received on divorce, child custody, child support, and the division of marital property and debts. The [c]ourt, based on the extensive testimony and documents received," then expressed findings of fact and conclusions of law.

The record before us contains no transcript of such temporary hearings. Indeed, Husband acknowledges in his brief that "the parties have been through multiple

Ga. L. 2016, p. 883, §§ 3-1 (codified at OCGA § 15-3-3.1 (a) (5)), 6-1 (c).

[2] Pro se on appeal, Wife has filed no brief in this Court.

2

hearings. [Husband] understands that not all the hearings were transcribed and therefore are not of use on this Appeal." It is axiomatic that:

> "Where an appeal is taken which draws in question the transcript of the evidence and proceedings, it shall be the duty of the appellant to have the transcript prepared at the appellant's expense." OCGA § 5-6-41 (c); see also OCGA § 5-6-42 ("Where there is a transcript of evidence and proceedings to be included in the record on appeal, the appellant shall cause the transcript to be prepared and filed as provided by Code Section 5-6-41."). Husband, as the appellant here, bears the burden of showing error below. In accordance with the presumption of the regularity of court proceedings, we must assume in the absence of a transcript that there was sufficient competent evidence to support the trial court's findings.

(Citation, punctuation, and footnote omitted.) *Reed v. Reed*, 295 Ga. 574, 577-578 (2) (761 SE2d 326) (2014).

### *Child Custody*

2. Husband contends that the trial court erred in awarding Wife primary physical custody of the minor children, arguing that there was no evidence to support that ruling.

> When child custody is an issue between parents, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this court will not

interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion.

(Citation and punctuation omitted.) *Terrell v. Terrell*, 294 Ga. 208, 210 (751 SE2d 415) (2013).

Husband cites that he and Wife were living at separate residences during the divorce proceedings, and that the minor children alternated weeks living with each of them. Husband claims there was evidence not only that he was a fit and capable parent, but that he had taken better care of the minor children than had Wife. He complains that the trial court found him "dishonest in his personal affairs" based on Wife's accusations that he had committed adultery, and asserts that the trial court had no reason to accept Wife's allegations as true. Husband contends that the trial court erroneously disregarded his evidence showing that it was in the best interest of the minor children that they either live with him as the primary physical custodian or continue alternating weeks living with either parent. Husband posits that, because the court did neither, the custody decision rested upon Wife's unfounded charges of adultery and the trial judge's apparent bias against him.

In determining primary physical custody, however,

the trial judge was not limited to evidence that [Husband] believes supported [his] claims. Rather, the trial judge sat as the finder of fact, and the determination of . . . [primary] physical custody . . . involved resolving evidentiary conflicts and issues of witness credibility. The trial judge was not required to believe the testimony [cited] by the [Husband], nor to reject the evidence adduced by the [Wife].

(Punctuation and footnotes omitted.) *Kuehn v. Key*, 325 Ga. App. 512, 517 (1) (754 SE2d 103) (2014). When reviewing a trial court's custody ruling, we view the evidence in the light most favorable to the trial court's decision. See *Strickland v. Strickland*, 298 Ga. 630, 633-634 (1) (783 SE2d 606) (2016). And "due deference must be given to the trial court, acknowledging that it ha[d] the opportunity to judge the credibility of the witnesses." Id.

Here, the final judgment reveals that the trial court carefully weighed the evidence and was guided by a consideration of the best interests of the parties' minor children. While the court found that both parties were fit and capable of caring for the children, its decision to grant Wife primary physical custody was premised, among other things, on: the ages of the minor children, then 5 and 6 years old (and enrolled in Pre-K and kindergarten); the love, affection, bond, and emotional ties between the minor children and their mother; the love, affection, bond, and emotional ties between

the minor children and their oldest sister who lived with Wife; Wife's capacity to provide the children with food, clothing, medical care, and other basic necessities; and Wife's demonstrated attentiveness to the minor children's physical, mental, emotional, and educational needs, as well as their extracurricular activities. The trial court also determined that Husband's physical and mental impairments limited his capacity to care for the minor children, including his suffering from migraine headaches, chronic back and neck pain, vertigo, and non-epileptic seizures, the latter of which were triggered by Husband's inability to cope with stress. The court cited that in 2014, Husband suffered a seizure that rendered him unconscious and hospitalized. The court further found that, while Husband's health conditions were manageable through prescribed medication and behavioral health counseling, Husband had not followed the recommendation of undergoing health counseling. Also, the court found that despite having been directed by a physician not to operate a motor vehicle until he had been free of any seizure for six months, Husband had refused to comply with that recommendation. The court expressed concern with Husband's driving with the minor children. And the trial court cited the guardian ad litem's reports and recommendation that Wife be granted primary physical custody.

[W]here the trial court has exercised its discretion and awarded custody of children to one fit parent over the other fit parent, [an appellate court] will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. Where [as here] there is . . . evidence to support the decision of the trial court, [an appellate court] cannot say there was an abuse of discretion.

(Citations omitted.) *McLendon v. McLendon*, 297 Ga. 779, 780-781 (3) (778 SE2d 213) (2015) (rejecting claim that custody ruling was based solely to punish appellant for an act of adultery, where the record revealed that the trial court had carefully weighed the evidence, had not been motivated merely to punish appellant, and had found the appellant lacking in credibility); *LaFont v. Rouviere*, 283 Ga. 60, 61-62 (1, 2) (656 SE2d 522) (2008) (affirming judgment granting custody to mother, where trial court – after being presented with evidence that, inter alia, child had close bond with mother, mother had served as primary caretaker, and father had engaged in adulterous conduct – based its custody ruling on the child's best interest).

Furthermore, Husband's apparent speculation of judicial bias is unavailing. See generally *Patel v. State of Ga.*, 289 Ga. 479, 486-487 (5) (713 SE2d 381) (2011) (holding that for an alleged bias to be disqualifying, it must stem from an extra-judicial source and result in a ruling premised on something other than what the judge

7

learned from his participation in the case); *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 447 (3) (469 SE2d 509) (1996) (concluding that party's claim of judicial bias was not properly before appellate court, where party failed to raise the issue of judicial bias in the trial court or request recusal).

For the foregoing reasons, Husband has demonstrated no basis to disturb the custody ruling.

*Division of Property*

3. Husband, who retired from the United States Army on January 27, 2014, contends that the trial court erred by treating his retirement pay as marital property.

In the final judgment, the trial court found that the parties had been married 20 years while Husband was in the military; that during their marriage, Wife had served as the family homemaker and stay-at-home mother, that she had periodically worked in child care, and that she had obtained no education beyond high school. The trial court also found that Husband had retired from the military with a medical discharge, was determined by the Veterans' Administration to be 100% disabled, and was receiving "monthly retirement benefits in the amount of $4,162." Concluding that such monies constituted marital property, the trial court awarded Wife a portion of that pay.

8

Husband argues on appeal that the trial court exceeded its authority by awarding any amount of his "disability retirement income" to Wife. Husband relies upon the federal statute governing military retirement pay, the Uniform Service Former Spouses' Protection Act ("Act"),[3] as that statute has been interpreted in cases such as *Howell v. Howell*, 581 U. S. __ (137 S. Ct. 1400, 197 LE2d 781) (2017), and *Mansell v. Mansell*, 490 U. S. 581, 594-595 (109 S. Ct. 2023, 104 LEd2d 675) (1989).

In *Howell*, before turning to the facts underlying that case, the United States Supreme Court set out as the legal framework:

> [The Act] provides that a State may treat as community property, and divide at divorce, a military veteran's retirement pay. See 10 USC § 1408 (c) (1). The [Act], however, exempts from this grant of permission any amount that the Government deducts "as a result of a waiver" that the veteran must make "in order to receive" disability benefits.[4] § 1408

---

[3] 10 USC § 1408. See generally *Michel v. Michel*, 286 Ga. 892, 893-894 (1)(692 SE2d 381) (2010) (providing background and analysis of the Act).

[4]     The Federal Government has long provided retirement pay to those veterans who have retired from the Armed Forces after serving, e.g., 20 years or more. It also provides disabled members of the Armed Forces with disability benefits. In order to prevent double counting, however,

9

(a) (4) (B). We . . . held . . . [in *Mansell*, 490 U. S. at 594-594,] that a State cannot treat as community property, and divide at divorce, this portion (the waived portion) of the veteran's retirement pay.

*Howell*, 137 S. Ct. at 1402. As *Howell* went on to succinctly summarize *Mansell's* holding: "[F]ederal law completely preempts the States from treating waived military retirement pay as divisible community property." *Howell*, 137 S. Ct. at 1405 (II). See also *Mansell*, 490 U. S. at 584 (I) (A), n. 2 (explaining further that the Act's language "covers both community property and equitable distribution [s]tates, as does [the *Mansell*] decision.").

In *Howell*, the Court was presented the following facts. Years *after* a veteran's former spouse had been receiving a portion of the veteran's total retirement as a result of the state's court having treated such pay as community property, the Department

federal law typically insists that, to receive disability benefits, a retired veteran must give up an equivalent amount of retirement pay. And, since retirement pay is taxable while disability benefits are not, the veteran often elects to waive retirement pay in order to receive disability benefits.

*Howell*, 137 S. Ct. at 1402-1403 (I) (A); see also *Mansell*, 490 U. S. at 583-584 (I) (A) (same).

of Veterans Affairs found that the veteran was 20 percent disabled due to a service-related injury. *Howell*, 137 S. Ct. at 1404 (I) (B). The veteran then waived a share of the retirement pay in order to receive nontaxable disability benefits. Id. The veteran's former spouse then procured from the state court an order that the veteran ensure that she nevertheless "receive her full [percentage] of the military retirement without regard for the disability." Id. The *Howell* Court framed as the issue: "Can [a state court] subsequently increase . . . the amount the divorced spouse receives each month from the veteran's retirement pay in order to indemnify the divorced spouse for the loss caused by the veteran's waiver?" Id. at 1402. Citing its interpretation of the Act in *Mansell*, the Court answered "no." Id.

In the instant case, when urging the trial court to grant Wife all three of the parties' residences as part of the overall equitable distribution of marital property,[5] Wife's counsel asserted that Husband "had 20 years of credible service," that "they had 20 years of marriage," and that,

---

[5] During the pendency of the divorce, Wife lived at one residence; Husband lived at another; and their third residence was being rented. In the final judgment, the trial court awarded to Wife the residence in which she had been living; awarded to Husband the residence in which he was living; and ordered that the residence being rented be sold, and the parties split the proceeds.

because of the way [Husband] took his retirement as disability retirement, and it's 100% disability retirement, . . . [Wife] . . . loses out on almost $2000 a month that she would've gotten under . . . regular retirement. . . . So unless we're talking about some alimony or some other way, she doesn't have any retirement because of support of his military career and the moving around and different things like that.

In the final judgment, the trial court stated that "[n]either party is awarded alimony," but awarded Wife a portion of Husband's retirement pay, including that:

[Wife] shall receive her share of [Husband's] military retirement calculated without reduction for disability VA payments, disability severance pay, military disability pay or any other reason. For purposes of this order military retired pay includes retired pay actually paid or to which [Husband] would be entitled based only on length of [Husband's] creditable service. . . . [Wife's] share shall not be reduced because of deduction or reduction for federal taxes, disability payments to [Husband] or any reduction resulting from [Husband's] waiver of any part of the benefit. . . . [I]f [Husband] waives, . . . all or any portion of his entitlement to his military retirement pay for any reason . . . and this results in any diminution of the payments due to [Wife], [Husband] shall fully indemnify and hold harmless for any loss resulting from the reduction of regular monthly retired pay and shall pay directly to [Wife] any payments or portions of payment which [Wife] does not directly receive from the retirement center as a result of the reduction in the allotment.

12

We agree with Husband that the trial court thereby overstepped its authority.[6] Thus, the judgment as to the equitable division of property must be vacated and "the case remanded for further proceedings consistent with this opinion. We note that on remand, the trial court has a broad discretion to make an equitable division of [the marital property] upon consideration of all the relevant evidence."[7] (Citation and punctuation omitted.) *Michel v. Michel*, 286 Ga. 892, 894-895 (1) (692 SE2d 381) (2010); see *Highsmith v. Highsmith*, 289 Ga. 841, 842-843 (1) (716 SE2d 146) (2011) (remanding with directions to reexamine the division of the marital estate without considering non-marital asset); see generally *Howell*, 137 S. Ct. at 1406 (II) (recognizing the hardship that congressional preemption may work on divorcing spouses, but noting that a family court determining the value of a family's assets may take account of the contingency that some military retirement pay might be waived,

---

[6] Although the final judgment was entered prior to the *Howell* decision, the final judgment violated also the holding as enunciated in the *Mansell* decision.

[7] Husband has asserted also that "the [trial court] erred in requiring [him] to continue paying for survivor benefits because it was error for the Court to divide the disability retirement in the first place. See *Howell v. Howell*, 137 S. Ct. 1400 (2017)." Given the circumstances presented in this case, we additionally vacate such portion of the final judgment; on remand, the trial court is directed to revisit and clarify its decision on this issue. See generally, e.g., *Hipps v. Hipps*, 278 Ga. 49, 50-51 (1) (597 SE2d 359) (2004) (concerning characterization of monies relating to a survivor's benefit).

13

and thus take account of reductions in value when it calculates or recalculates the need for spousal support).

4. Husband contends that the trial court erred in dividing the property, arguing that the trial court miscalculated the equity in one of their residences.

The trial court calculated the equity at $33,000, based upon a (stipulated) fair market value of $185,000, and its finding of an outstanding mortgage debt of $152,000. Husband contests the latter figure, asserting that the "only evidence" before the court was that the debt was approximately $178,000.

The "only evidence" that Husband cites is his answer at the bench trial when asked about the property: "My mortgage, when I filed for divorce and stuff like that, was about 178." But when Husband so testified, more than two years had passed since he filed for divorce in June 2013. Furthermore, Husband itemized on his August 2013 financial affidavit – which was presented without objection to the trial judge during the bench trial[8] – a monthly "mortgage or rent" expense of approximately $2,000. And at the bench trial, Husband updated the court that an increase of the

_____

[8] At the bench trial, Wife's counsel reported to the court that Husband had ignored Wife's repeated discovery requests for updated financial information; Husband's counsel acknowledged that the August 2013 financial affidavit had been the most recent one that Husband had provided, then asserted that there were no material changes.

14

monthly mortgage expense obligated him to pay each month $2100, and that he was current on that financial obligation. Thus, the cited single response given by Husband at the bench trial fails to establish merit in this contention. And at any rate, Husband cannot show reversible error on this factual issue, given the absence of transcripts of evidentiary hearings in this case.[9] See generally *Gillespie v. Gillespie*, 259 Ga. 838 (388 SE2d 688) (1990).

Again, we point out that on remand, the trial court has broad discretion to make an equitable division of the marital property based upon consideration of any relevant evidence. See Division 3, supra.

5. Husband contends that the trial court erred in awarding Wife the personal property set forth on a particular list adduced during the bench trial, asserting that the list included his separate property that was not subject to equitable division.

In support of this contention, Husband cites only a portion of his testimony relating to one or more sewing machines. During that portion, Husband acknowledged that Wife was a seamstress and had once tried to start a business creating clothing. After acknowledging that he had at his house "[h]er sewing

_____

[9] See Division 1, supra.

15

machine," Husband added,"She's trying to ask for . . . one sewing machine [that] is my mother's sewing machine."

The cited testimony does not establish reversible error. "In a bench trial, the court sits as the finder of fact and, as such, is charged with the responsibility of determining whether and to what extent a particular item is a marital or non-marital asset and then exercising its discretion and dividing the marital property equitably." *Hammond v. Hammond*, 282 Ga. 456, 458 (4) (651 SE2d 95) (2007). See also *Flory v. Flory*, 298 Ga. 525, 526 (783 SE2d 122) (2016) ("Property that once may have been separate — such as gifts, inheritances, or pre-marital property — may be converted into a marital asset if a spouse takes action manifesting an intent to transform that separate asset into marital property."). "As the final arbiter of questions of fact and witness credibility, the [trial judge] was free to reject portions of Husband's testimony and conclude from the remaining evidence" that the sewing machine(s) was/were marital property subject to equitable division. *Curran v. Scharpf*, 290 Ga. 780, 782 (2) (726 SE2d 407) (2012). And at any rate, given the absence of transcripts of other evidentiary hearings in this case, Husband cannot

16

establish reversible error as to this factual issue.[10] See generally *Gillespie*, 259 Ga. at 838.

We again point out that on remand, the trial court has broad discretion to make an equitable division of the marital property based upon consideration of any relevant evidence. See Division 3, supra.

*Child Support*

6. Husband contends that the trial court erred in calculating his gross income for purposes of determining the amount of child support he would pay.

(a) Husband claims that the trial court erred by "including [his] GI Bill benefits" in the calculation of his gross income. Husband, who testified at the bench trial that he received monies for his enrollment in school, urges on appeal that such monies are to be "used for the veteran to attend school and should not be included in gross income." With bare citation to *Neville v. Blitz*, 122 So3d 70, 73 (Miss. 2013) (addressing whether a state court could appropriate GI Bill benefits as marital property), Husband makes the broad assertion: "Federal law preempts state law with regard to the appropriation of Post-9/11 GI Bill benefits." This contention provides no basis to disturb the final judgment.

_____

[10] See Division 1, supra.

17

Husband has not shown that he raised this argument below; and as a general rule, this court does not consider arguments raised for the first time on appeal.[11] But even assuming that Husband did not waive ths issue below,[12] he has abandoned it on appeal; his broad assertion – identifying no particular state law provision that is purportedly at odds with a specific federal provision[13] – falls short of constituting "meaningful argument contemplated by this Court's rules." (Punctuation omitted.) *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, 682 (4) (b), n. 30 (634

---

[11] See, e.g., *Mims v. Mims*, 297 Ga. 70, 73, n. 8 (772 SE2d 674) (2015) ("[T]his issue was not raised by husband below, and will not be considered in this appeal."); *Forsyth County v. Ga. Transmission Corp.*, 280 Ga. 664, 669 (5) (632 SE2d 101) (2006) (declining to address preemption question, where the trial court did not distinctly rule on the point).

[12] Compare *Cancel v. Medical Center of Central Ga.*, 345 Ga. App. 215, 224 (1) (c) (812 SE2d 592) (2018) ("The issue of preemption not having been adequately raised or ruled on below, we decline to address it here."), with *Jones v. Sabal Trail Transmission, LLC*, 336 Ga. App. 513, 516 (2) (784 SE2d 865) (2016) ("[T]he defense of preemption can be jurisdictional, and therefore nonwaivable, if success on the preemption defense would dictate the choice of forum and thereby deprive the reviewing court of subject matter jurisdiction. In contrast, the defense of preemption is waivable where it merely dictates a different choice of law.") (physical precedent only).

[13] Cf. *Howell*, 137 S. Ct. at 1402 (citing specific statutory language that exempts from a state court's authority to divide as community property any amount waived by a veteran in order to collect disability benefits).

18

SE2d 802) (2006).[14] And to the extent that Husband is claiming that Georgia's child support statute, OCGA § 9-16-15, is generally preempted by "federal law," that claim has already been rejected by the Georgia Supreme Court in *Ward v. McFall*, 277 Ga. 649, 651-653 (2) (593 SE2d 340) (2004) (reciting that "[t]here is a strong presumption *against* pre-emption in domestic relations matters," and discerning no federal pre-emption with respect to OCGA § 19-6-15) (emphasis in original).[15] See generally *Rose v. Rose*, 481 U.S. 619 (107 S. Ct. 2029, 95 LEd2d 599) (1987) (rejecting arguments that federal law preempted state court from basing *child support* award on veterans' disability benefits); accord *Keck v. Harris*, 277 Ga. 667, 669 (2) (594 SE2d 367) (2004) (reciting principle that "[b]efore a state law governing

---

[14] See *Gunn v. State*, 342 Ga. App. 615, 623-624 (3) (804 SE2d 118) (2017) (deeming abandoned and thus refusing to address claims of error, where claims were not supported by meaningful argument, because beyond one or two case citations relating to basic legal principles, appellant provided no authority in support of his specific contentions); *Higgins v. State*, 251 Ga. App. 175, 178 (3), n. 3 (554 SE2d 212) (2001) ("An assertion of error followed by a case citation is not legal argument. As we have explained, legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts.") (citation and punctuation omitted).

[15] See *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 598 (3) (a) (748 SE2d 846) (2013) ("The preemption doctrine is a product of the Supremacy Clause, see U. S. Const., Art. VI, Cl. 2, which invalidates state laws that interfere with, or are contrary to, federal law.") (citation and punctuation omitted); *In the Interest of E. T.*, 342 Ga. App. 710, 712, n. 2 (804 SE2d 725) (2017) ("Court [of Appeals] has jurisdiction to address issues involving settled principles of constitutional law.").

domestic relations will be overridden, it must do major damage to clear and substantial federal interests"). This contention is unavailing.[16]

(b) Husband contends that the trial court erred by including in his gross income $625, representing the monthly rental proceeds from one of the three residences that the spouses owned together.

Husband acknowledged on his August 2013 financial affidavit that he received $650 each month as "rental income." And at the bench trial, he testified that the house was then being rented for $675, from which he was paying incidental expenses.

Husband contests the inclusion of the $625 in his gross income, citing that in a prior temporary order, the trial court mandated him to split the rental proceeds with Wife. Given that mandate, Husband claims on appeal, he never received the full rental

---

[16] See generally, e.g., OCGA § 19-6-15 (f) (1) (A) (vii, xiv) ("gross income" shall include "all income from any source," including – but not limited to – recurring income from pensions or retirement plans of the Veterans Affairs and disability benefits received under Veterans' Benefits Act of 2010, and basic allowance for housing, whether paid directly to the parent or received in-kind, for an active duty member or the United States armed forces); *East v. Stephens*, 292 Ga. 604, 606 (740 SE2d 156) (2013) ("[Child support] guidelines must be considered by any court setting child support, are a minimum basis for determining the amount of child support, and shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent.") (citations and punctuation omitted).

proceeds.[17] Husband further cites that, in the final judgment, the trial court ordered that the rental property be sold and that the parties share equally the proceeds. Once the property is sold, Husband points out, he will no longer receive the associated rental income.[18]

While it appears that the trial court intended to award the rental proceeds to Husband during the pendency of the anticipated sale of the rental property, the final judgment made no express equitable division in that regard. And at any rate, we vacated in Division 3 the trial court's equitable division of the marital property, which would include the rental property and associated rental proceeds. Accordingly, we vacate the child support award; and on remand, the trial court is further directed to revisit Husband's gross income and child support obligation and to clarify its decision with respect to rental proceeds, if any. See *Hammond*, 282 Ga. at 457-458 (2) (reversing judgment in part and remanding the case for recalculation of spouse's

---

[17] The trial court noted in the final judgment that Husband had failed to comply with the prior temporary order, and thus (separately) set forth an amount Husband consequently owed Wife.

[18] See, however, OCGA § 19-6-15 (f) (1) (D), which contemplates that gross income take into account "commissions, bonuses, overtime pay, military bonuses, and dividends," as well as "income . . . received on an irregular, nonrecurring, or one-time basis."

21

gross income and child support obligation, where the child support was based upon incorrect calculation of that spouse's gross income); see also *Dupree v. Dupree*, 287 Ga. 319, 320 (2) (695 SE2d 628) (2010) (reversing that part of the final decree that was "internally contradictory" and remanding the case for clarification).

*Judgment affirmed in part and vacated in part, and case remanded with direction. McMillian and Reese, JJ., concur.*