A05A1351. IN THE INTEREST OF M. H. W., a child.
(621 SE2d 779)

MIKELL, Judge.

In this case, a father appeals from the trial court's order terminating his parental rights with regard to his three-year-old son, contending that the trial court erred by: (1) limiting his cross-examination of the child's mother to a telephone conference call; and (2) denying his motion for a continuance. For reasons that follow, we affirm.

The record shows that on January 12, 2004, the mother filed a petition to terminate the father's parental rights based on parental misconduct. In a hearing held on February 11, 2004, the trial court advised the father that he had a right to a court-appointed attorney if he could not afford to hire one. See OCGA § 15-11-98 (providing for appointment of counsel for indigent parents in termination cases). The father requested court-appointed counsel, and the trial court agreed to appoint him counsel. The trial court also advised the father that the hearing on the petition to terminate would be held on February 26, 2004.

The mother's counsel then expressed concern about a possible continuance of the case at the last minute because appointed counsel

would need time to prepare for the hearing and consult with the father. As a result of these concerns, the mother's counsel asked for adequate notice of any continuance because the mother would be traveling from another county to appear at the hearing and witnesses would also be subpoenaed to appear. After hearing these concerns, the trial court stated that it did not plan to continue the case.

On February 25, 2004, the trial court appointed counsel for the father and informed the court-appointed counsel that a hearing was scheduled for the following day at 10:00 a.m. When court-appointed counsel appeared the following morning, he announced that he was not ready to proceed and requested a continuance. The following then transpired:

> THE COURT: All right. My inclination is to let [mother's counsel] present whatever evidence he would like to present today so that your witnesses will not have to return and then, at that point, we would stop and then I would grant your request to continue the case and we'll come back at another time to — that would give them time to —
> [FATHER'S COUNSEL]: Yes, sir.
> THE COURT: — to make any other inquiries you need to make. So, [mother's counsel], how do you feel about that?
> [MOTHER'S COUNSEL]: Well, my initial position, Your Honor, is that obviously, I'm opposed to a continuance. This is exactly the situation that we had hoped to avoid in coming in here before the Court for a pretrial conference a couple of weeks ago.
>
> I understand that [father's counsel] bears no fault in this and I presume [the father] bears no fault, but that was exactly the sort of situation that we were trying to avoid, so I would oppose a continuance.
>
> I will be fine with presenting the witnesses that I have here today, obviously, reserving the right for rebuttal after I hear [the father's] case, after he and [father's counsel] have an opportunity to prepare their case, but my witnesses are here and I'm prepared to proceed.
> THE COURT: Okay. Thank you.

After this exchange, father's counsel made no further objections and the court allowed the mother's witnesses to testify.

The mother's first witness testified that he worked as a janitor in the mother's office and that the father gave him a Bible to give to the mother. The father's counsel cross-examined him.

The mother's second witness was a police detective who testified that after interviewing an inmate confined with the father, he placed a hidden transmitting device on the inmate. After listening to a conversation between the inmate and the father, the detective learned that the father was trying to hire someone to kill his wife and young son. He was subsequently charged with solicitation of murder. The father's counsel cross-examined the detective at length about the poor quality of the recordings and the detective's inability to understand portions of the conversation.

Finally, the mother testified that after her divorce from the father, the trial court ordered that the father was to have no contact or visitation with the child and that he was not required to provide child support because he was incarcerated. She further testified that the father has never seen the child, never made any attempts to develop a relationship with the child since his birth, and never provided any financial support. Additionally, the trial court presiding over her divorce issued a permanent restraining order prohibiting the father from contacting the mother or the child. A copy of the divorce decree was entered into evidence, and it corroborated the mother's testimony. The mother further testified that the father was emotionally abusive and that he had an admitted drinking problem.

She further testified that the Bible given to her by the janitor had approximately 150 passages underlined which she found threatening to herself and her unborn child. These passages included, "and Abraham stretched forth his hand and took the knife to slay his son" and "the king said, 'Divide the living child in two and give half to the one and half to the other.'"

At the conclusion of the mother's direct testimony, the father's counsel stated:

> Judge, I should like to withhold my cross-examination until we present our case, when I have an opportunity to review the divorce papers and such as that. I don't want to ask her questions twice, if I can avoid that. I think reviewing those documents might help me to limit the questions I ask and be able to ask more pertinent questions.

After the mother expressed concern about having to travel again with a young child, the trial court ruled:

> To avoid your having to come back, I think what we'll do is, we'll set another hearing date and if you want to ask her questions in person, you can; otherwise, we'll have you stand by, by telephone and we'll have you — he can cross-examine you by telephone.

The father's counsel then stated that he wanted to reserve his cross-examination of the mother for a later time, and the case was continued until March 22, 2004.

On March 4, 2004, the trial court issued the following written order:

A hearing began in this case on February 26, 2004. However, the hearing could not be concluded on that date because [the father's counsel] needed additional time to prepare for cross-examination. The Court allowed the petitioner to present the direct testimony of [the mother]. If she is not able to return to the hearing in person, the Court will permit cross-examination of [the mother] by telephone.

Three days before the rescheduled hearing, the father moved for an order allowing his counsel to cross-examine the mother in person, contending that cross-examination by telephone would deprive him of "his constitutional right to confront the Petitioner at trial for a thorough and sifting cross examination." The father also asked for a continuance until after the trial of the pending criminal charges against him.

The trial court ruled, over the father's objection, that the mother would be cross-examined by telephone and that the father could present his case after the trial of the criminal charges against him. When the case was reconvened after the father's criminal trial, the evidence shows that he had been convicted of soliciting the murders of his wife and child and of two counts of aggravated stalking. He received five years imprisonment for the solicitation charge and eight years for each of the aggravated stalking charges.

At the conclusion of the hearing, the trial court informed the father that it did not believe there was enough evidence to terminate his parental rights based on "things like substance abuse and violence and that sort of thing at home." The court also advised, however, that it "would be hard for a judge to not terminate your parental rights" based on the criminal convictions and the divorce decree's prohibition against contact with the child.

In its written order terminating the father's parental rights, the trial court noted that the "divorce decree, which is unappealed, was a de facto termination of the father's parental rights." It also concluded that the father's criminal convictions demonstrated parental misconduct warranting termination of his parental rights.

1. The father contends that the trial court's refusal to allow in-person cross-examination of the mother violated his right to confront the witnesses against him. As noted by our Supreme Court,

the main and essential purpose of confrontation is to secure the opportunity of cross-examination. The advantage to be obtained by the personal appearance of the witness, her demeanor upon the stand and manner of testifying, is merely secondary. The importance of this secondary advantage is not, however, to be minimized. The point we wish to stress is that the primary advantage, and the one which the constitutional provision mainly guarantees, is the right of the accused to be confronted by the witness against him, to secure the opportunity of thorough cross-examination.

(Citation and punctuation omitted.) *Denson v. State*, 150 Ga. 618, 622 (104 SE 780) (1920).

We have previously recognized that a parent generally has the right to confront witnesses in termination cases. See *In the Interest of M. S.*, 178 Ga. App. 380, 381 (343 SE2d 152) (1986) (parents had the right to be in observation room during questioning of children by their counsel; parent would not have been seen or heard by children). However, in a criminal case in which the child witness was allowed to testify in a position that prevented the defendant from making eye contact with her, we affirmed the procedure employed by the trial court, noting, "[c]onfrontation in a criminal trial really means the right to ask questions and secure answers from the witness confronted." (Citation and punctuation omitted.) *Atwell v. State*, 204 Ga. App. 187, 188 (1) (419 SE2d 77) (1992). Since the defendant in *Atwell* "had the opportunity to, and did, thoroughly cross-examine the witness," we found no violation of his confrontation rights. Id. We recognize that our opinion in *Atwell* is distinguishable from the case sub judice because there the witness was present in the courtroom, and the attorney conducting the cross-examination was able to view the witness's demeanor. Thus, it does not control the outcome of this case, which the parties agree presents an issue of first impression in this state.[1]

We need not resolve this issue, however, because harm must result from the alleged violation of the father's confrontation rights. See *State v. Vogleson*, 275 Ga. 637, 641 (3) (571 SE2d 752) (2002). We find, beyond a reasonable doubt, that no harm resulted from the trial court's decision to allow cross-examination by telephone only. The trial court's decision to terminate the father's rights was grounded on two objective facts that did not depend in any way on the credibility

---

[1] Other jurisdictions considering the issue of testimony by telephone have reached a variety of results depending upon the particular facts and circumstances of the case before them. See generally "Permissibility of Testimony By Telephone in State Trial" 85 ALR4th 476.

of the mother's testimony: (1) the divorce decree permanently prohibiting the father from all contact with his child; and (2) the father's conviction[2] of soliciting someone to murder his child. Indeed, the trial court specifically found that the mother's testimony about past acts of violence against her during the marriage and the father's substance abuse were not sufficient to terminate his parental rights.

2. In his remaining enumerated error, the father contends the trial court should have granted his motion for continuance made at the beginning of the hearing on February 26, 2004. "A trial court's decision to grant or to deny a continuance will not be disturbed absent abuse of discretion." (Citation omitted.) *In the Interest of T. R.*, 270 Ga. App. 401-402 (1) (606 SE2d 630) (2004). The appellant must also show that harm resulted from the denial of the continuance. *Lee v. State*, 258 Ga. 82, 84 (3) (365 SE2d 99) (1988). In this case, the trial court partially granted the father's motion for continuance, and the father voiced no objection to the trial court's proposal and decision to allow the mother to present her case without delay. Based on the facts and circumstances of this particular case, we find no abuse of discretion by the trial court. We further find, for the reasons outlined above, that no harm resulted from the trial court's partial denial of the motion for continuance. The father "has failed to demonstrate how additional time would have benefitted him or how any lack of time harmed him." *Gentry v. State*, 255 Ga. App. 255, 257 (2) (564 SE2d 845) (2002).

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 23, 2005 — 

*Richard C. Metz*, for appellant.
*McCorkle, Pedigo & Johnson, Kenneth P. Johnson*, for appellee.

---

[2] The father does not assert insufficient evidence supports the trial court's decision to terminate his parental rights. See *In the Interest of J. E. L.*, 223 Ga. App. 269-270 (1) (477 SE2d 412) (1996) (trial court can consider nonfinal conviction in termination of parental rights case).