**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 26, 2020**

# In the Court of Appeals of Georgia

A20A0118. IN THE INTEREST OF N. T., a child.

BROWN, Judge.

After sixteen-year-old N. T.[1] entered an admission to stabbing a neighbor in the head with a kitchen knife, the Juvenile Court of DeKalb County adjudicated him delinquent for aggravated assault.[2] Following the adjudication, the juvenile court entered a restitution order, requiring N. T. to pay restitution in the amount of $28,516.16 for medical bills incurred by the victim. N. T. appeals, contending that the juvenile court (1) improperly appointed his delinquency attorney to serve as his guardian ad litem during the restitution hearing, and (2) erred in ordering $28,516.16

---

[1] N. T. is from Nepal and relocated to the United States with his family in 2011. His parents do not speak English.

[2] The State dismissed three additional charges.

in restitution because N. T. lacks the present and future ability to pay this amount. For the reasons that follow, we affirm.[3]

The facts presented at the disposition hearing show that the victim was walking home late on the evening of January 28, 2019, when he saw N. T. and two other boys knocking on his front door. The three boys approached the victim, began hitting him, and tried to take his hat. After the victim dropped his phone and fell to the ground, the boys beat him up. The victim ran to his apartment and called his friends. When the victim opened the door for his friends, two of the boys grabbed him and held him while N. T. stabbed him in the head. The victim and N. T. lived in the same apartment complex and had seen each other around the complex before the stabbing. The juvenile court adjudicated N. T. delinquent, committed him to the custody of the Department of Juvenile Justice ("DJJ"), and sentenced him to 36 months, with 15 months in restrictive custody, followed by 23 months "under intensive supervision."

---

[3] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of a hearing en banc on the question of overruling *Galimore v. State*, 321 Ga. App. 886, 887 (743 SE2d 545) (2013) and *In the Interest of E. W.*, 290 Ga. App. 95, 97 (3) (658 SE2d 854) (2008), and disapproving *Vaughn v. State*, 324 Ga. App. 289 (750 SE2d 375) (2013).

2

At the subsequent restitution hearing, the juvenile court, over objection, appointed N. T.'s delinquency attorney to act as his guardian ad litem after his parents, who had notice of the hearing, did not attend. The State presented uncontroverted evidence that the victim incurred medical bills in the amount of $28,516.64. N. T. also testified at the hearing, stating that he does not have a bank account, has never had a job, and does not own a car or a house, but that he has experience with computers and would like to find work as a software engineer. The juvenile court entered a restitution order, ordering N. T. to pay restitution in the amount of $28,516.16, with payments to begin three months after his release from restrictive custody. The order further specified that "[a]ny payments the victim receives from the Victim's Compensation Fund shall be credited to the amount of restitution owed by [N. T.]"

1. In a compound enumeration of error, N. T. alleges that the juvenile court (a) erred in appointing his delinquency attorney to serve as his guardian ad litem during the restitution hearing, despite the attorney's objection, and (b) abused its discretion in denying his request to continue the restitution hearing until his parents or a DJJ representative could be present to better serve his interests. With respect to the former contention, N. T. contends that the juvenile court (i) failed to determine whether an

3

appropriate parent, guardian, or legal custodian was available to serve N. T.'s best interest; (ii) failed to ascertain whether the appointment of a guardian ad litem was in N. T.'s best interests; and (iii) prevented counsel from performing her required duties to N. T. as guardian ad litem, namely assessing his best interests and determining whether a conflict existed between her duty as counsel and N. T.'s best interests.

(a) OCGA § 15-11-2 (35) defines "guardian ad litem" as "an individual appointed to assist the court in determining the best interests of a child." In delinquency proceedings, the juvenile court

> shall appoint a guardian ad litem whenever: (1) An alleged delinquent child appears before the court without his or her parent, guardian, or legal custodian; (2) It appears to the court that a parent, guardian, or legal custodian of an alleged delinquent child is incapable or unwilling to make decisions in the best interests of such child with respect to proceedings under this article such that there may be a conflict of interest between such child and his or her parent, guardian, or legal custodian; or (3) The court finds that it is otherwise in a child's best interests to do so.

OCGA § 15-11-476 (a). Subsection (b) of that Code section further provides that "[t]he role of a guardian ad litem in a delinquency proceeding shall be the same role

4

as provided for in all dependency proceedings under Article 3 of this chapter." OCGA § 15-11-476 (b). In dependency proceedings under Article 3 of Chapter 11, the General Assembly has expressly approved of the dual appointment that occurred here: "An attorney for an alleged dependent child may serve as such child's guardian ad litem unless or until there is conflict of interest between the attorney's duty to such child as such child's attorney and the attorney's considered opinion of such child's best interests as guardian ad litem." OCGA § 15-11-104 (b). As this Court has recognized, "the fundamental duty of both a guardian ad litem and an attorney is to act in the best interests of the party whom they represent." *In the Interest of A. P.*, 291 Ga. App. 690, 691 (1) (662 SE2d 739) (2008).

With this framework in mind, we are unpersuaded by N. T.'s claims for several reasons. First, the law allows the juvenile court to appoint a guardian ad litem when a delinquent child appears before the court without his or her parent, guardian, or legal custodian. In N. T.'s view, the juvenile court was required to find his parents incapable or unwilling to participate in order to appoint a guardian ad litem, but the statute does not require such a finding; it is enough that the child appears without his or her parent, guardian, or legal custodian. Here, the transcript of the restitution hearing reflects that N. T.'s parents were not present even though the State had served

5

them with notice of the hearing. Additionally, both parents were present during the disposition hearing with an interpreter when the juvenile court continued the restitution hearing for thirty days, and, therefore, should have known that the restitution hearing was imminent.

Second, there is no requirement that the juvenile court ascertain whether a representative from DJJ (N. T.'s legal custodian) was present in the courtroom and/or capable or willing to make decisions in N. T.'s best interests.[4] As set out above, a juvenile court is given broad discretion to appoint a guardian ad litem if it is otherwise in a child's best interests to do so, even in the presence of a parent, guardian, or legal custodian. While the juvenile court did not make the specific findings identified by N. T., a "trial judge is presumed to know the law and presumed to faithfully and lawfully perform the duties devolved upon it by law. And this Court will not presume that the trial court committed error where that fact does not affirmatively appear." (Citation and punctuation omitted.) *In the Interest of I. W.*, 304 Ga. App. 225, 229 (3) (695 SE2d 739) (2010). In this case, we may presume that the juvenile court concluded that N. T.'s delinquency attorney would best serve as his

---

[4] We note that during the restitution hearing, counsel advised the juvenile court that DJJ was N. T.'s custodian, and that DJJ "would be the more appropriate party" to serve as N. T.'s guardian ad litem.

6

guardian ad litem during the restitution hearing for the purpose of assisting the court in determining what was in his best interests irrespective of DJJ's presence and/or representative capabilities.

Lastly, N. T.'s contention fails because he cannot show that an actual conflict existed. An attorney can serve as both a guardian ad litem and legal representative "*unless or until there is conflict of interest* between the attorney's duty to such child as such child's attorney and the attorney's considered opinion of such child's best interests as guardian ad litem." (Emphasis supplied.) OCGA § 15-11-104 (b). See *In the Interest of J. N.*, 344 Ga. App. 409, 410 (810 SE2d 191) (2018). See also *In the Interest of W. L. H.*, 292 Ga. 521, 528 (3) (739 SE2d 322) (2013) (Hunstein, dissenting) (noting that Formal Advisory Opinion No. 10-2 (2012) provides that "[w]hen the same person serves in a dual role as the attorney and guardian ad litem for the child and 'an irreconcilable conflict' arises between the child's express wishes and the attorney's considered opinion of the child's best interests, . . . the attorney must withdraw from his or her role as the child's guardian ad litem"). Aside from arguing that counsel's hasty appointment as guardian ad litem precluded counsel from assessing whether a conflict of interest existed, N. T. has failed to identify what if any

7

conflict of interest existed or how he was harmed by the dual appointment.[5] Without such a showing this argument fails. See generally *Weems v. State*, 268 Ga. 515, 516-517 (3) (491 SE2d 325) (1997) (trial court did not err in refusing to disqualify co-defendant's counsel where defendant failed to show how he was harmed by any purported conflict); *In the Interest of R. J.*, 308 Ga. App. 702, 709 (4) (708 SE2d 626) (2011) (rejecting mother's claim that children's interests were not adequately represented during termination hearing where children were represented by guardian ad litem and mother failed to establish harm).

(b) We find no merit in N. T.'s claim that the juvenile court abused its discretion in denying his motion for a continuance. The record reflects that at the close of the disposition hearing, the juvenile court reluctantly continued the restitution hearing for thirty days to allow the State to obtain all necessary evidence related to the victim's medical bills. Delinquency counsel objected to the continuance, arguing that the State should have been prepared at that time to deal with the entirety of N. T.'s case. When the parties convened thirty days later for the restitution hearing,

---

[5] Although N. T. argues in his reply brief that counsel was prevented from "raising" confidential information obtained from N. T. that may have resulted in a lower restitution amount, he does not hint at what that information could be or to what it relates. This argument is theoretical and does not support a showing of an actual conflict or harm.

8

delinquency counsel asked for a continuance to inform N. T.'s mother about the hearing and secure her presence. The State objected, arguing that the victim was present and prepared to testify about his medical bills. After determining that the parents had been served with notice of the hearing, but failed to appear, and that counsel could serve as N. T.'s guardian ad litem, the juvenile court denied the motion.

OCGA § 15-11-478 provides that

[a] continuance shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the moving party at the hearing on the motion. Whenever any continuance is granted, the facts which require the continuance shall be entered into the court record.

The denial of a motion for continuance

is addressed to the sound discretion of the trial court, and this Court will not interfere unless it is clearly shown that the court abused its discretion. The trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the ends of justice require. Broad discretion must be granted trial courts on matters of continuances.

(Citation and punctuation omitted.) *Tyner v. State*, 313 Ga. App. 557, 560 (3) (722 SE2d 177) (2012). Importantly, "[t]he appellant must . . . show that harm resulted

9

from the denial of the continuance." *In the Interest of M. H. W.*, 275 Ga. App. 586, 591 (2) (621 SE2d 779) (2005). Specific to juvenile court proceedings, a continuance is mandatory "when the lack thereof will result in injury or prejudice to the defendant." (Citation and punctuation omitted.) *In the Interest of E. T.*, 342 Ga. App. 710, 721 (1) (b) (804 SE2d 725) (2017).

While N. T. argues that the juvenile court should have granted his motion for continuance to ensure that his parents or a DJJ representative could appear, he has not demonstrated what their presence would have offered to the hearing or how it would have changed the outcome of the hearing. See *In the Interest of S. P.*, 282 Ga. App. 82, 85 (3) (637 SE2d 802) (2006). Simply stating that his parents and/or a DJJ representative would have "served to represent his best interests" is not enough without a showing of what interests were not represented that should have been represented or what interests could have been better represented. See *In the Interest of C. L.*, 289 Ga. App. 377, 382 (2) (657 SE2d 301) (2008) (affirming denial of motion for continuance where juvenile adjudicated delinquent failed to show harm or how continuance would have benefitted him in any way); *M. H. W.*, 275 Ga. App. at 591 (2) (no harm resulted from denial of motion for continuance where appellant "failed to demonstrate how additional time would have benefitted him or how any

10

lack of time harmed him") (citation and punctuation omitted). Accordingly, the juvenile court did not abuse its discretion in denying N. T.'s motion for continuance.

2. N. T. does not dispute the amount of the hospital bill, but contends that the juvenile court erred in ordering $28,516.16 in restitution because he lacks the present and future ability to pay. In this regard, N. T. points out that he has never been able to obtain employment, cannot earn an income while he is in DJJ custody, has no assets, and has limited intellectual functioning as evidenced by an IQ of 69 and third-grade reading and math skills. We find no error.

"On appeal from an order of restitution, we review the record to determine whether a restitution award was supported by a preponderance of the evidence." *Tobias v. State*, 319 Ga. App. 320, 329 (5) (735 SE2d 113) (2012). OCGA § 17-14-5 allows a juvenile court to order restitution in any case involving delinquent juveniles: "[i]t is declared to be the policy of this state to recognize that restitution is consistent with the goal of rehabilitation of delinquent juveniles and to provide restitution in such cases." OCGA § 17-14-5 (a), (b). Pursuant to OCGA § 17-14-7 (b),

> [a]ny dispute as to the proper amount or type of restitution shall be resolved by the ordering authority by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the state. The burden of

11

demonstrating the financial resources of the offender or person being ordered to pay restitution and the financial needs of his or her dependents shall be on the offender or person being ordered to pay restitution. The burden of demonstrating such other matters as the ordering authority deems appropriate shall be upon the party designated by the ordering authority as justice requires.

The factors to be considered by the "ordering authority" when determining the nature and amount of restitution is governed by OCGA § 17-14-10, and include:

(1) The financial resources and other assets of the offender or person ordered to pay restitution including whether any of the assets are jointly controlled; (2) The earnings and other income of the offender or person ordered to pay restitution; (3) Any financial obligations of the offender or person ordered to pay restitution, including obligations to dependents; (4) The amount of damages; (5) The goal of restitution to the victim and the goal of rehabilitation of the offender; (6) Any restitution previously made; (7) The period of time during which the restitution order will be in effect; and (8) Other factors which the ordering authority deems to be appropriate.[6]

A victim is entitled to full restitution in the amount of his or her damages. See OCGA § 17-14-3 (a). In the context of a restitution award, "[d]amages means all special

---

[6] In *McCart v. State*, 289 Ga. App. 830 (658 SE2d 465) (2008), this Court concluded that the ordering authority is no longer required to make written findings of fact on these factors. Id. at 832.

damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced, except punitive damages and damages for pain and suffering, mental anguish, or loss of consortium." OCGA § 17-14-2 (2).

We are not persuaded by N. T.'s arguments. While the psychological evaluation of N. T. reflects that he had dropped out of high school and that his full scale IQ is 69, the psychological evaluation did not conclude that N. T. was incapable of working or that any "mental impairments . . . would prevent [him] from working." Compare *In the Interest of W. J. F.*, 302 Ga. App. 361, 363 (691 SE2d 271) (2010) (affirming restitution order where juvenile court considered psychological reports which showed average intelligence "and no mental impairments that would prevent [juvenile] from working"). N. T. was attending school while in DJJ custody, and, in fact, testified during the disposition hearing that he will do better in school, to which the juvenile judge replied, "I believe there may be some truth to that." N. T. testified at the restitution hearing that he has experience with computers, and that he had been looking for a job as a software engineer, repairing systems for schools, and that he wanted to do that kind of work "now and [in the] future."

The juvenile court concluded that N. T. would be a legal adult soon, that he was currently in school, and that there was nothing preventing him from "learn[ing] a number of different skills so that he can have a future and . . . earning capacity." Additionally, the juvenile court's statement during the disposition hearing reflects that the court found credible N. T.'s promise that he would do better; the psychological evaluation bolstered this determination, concluding that N. T. "may be responding well to the structure of school" and that "he desires to do better . . . and wants to make his family proud of him in the future." As to N. T.'s claim that he does not have the future earning capacity to pay restitution, OCGA § 17-14-10 no longer requires the ordering authority to consider that factor.[7] Indeed, this Court has stated

---

[7] OCGA § 17-14-10 was amended in 2005. See Ga. L. 2005, Act 20, § 5 (effective July 1, 2005). See also *McCart*, 289 Ga. App. at 830 (1). The prior version required the ordering authority to consider "[t]he probable future earning capacity of the offender and his dependents. . . ." This factor was deleted when the "Crime Victims Restitution Act of 2005" ("the Act") became effective on July 1, 2005. In *Galimore v. State*, 321 Ga. App. 886, 887 (743 SE2d 545) (2013), and *In the Interest of E. W.*, 290 Ga. App. 95, 96 (2), 97 (3) (658 SE2d 854) (2008), this Court stated that in addition to considering the amount of the victim's damages, the trial court must also consider the offender's present financial condition and future earning capacity, as well as the goal of rehabilitation to the offender. These statements — made after the effective date of the Act — were erroneous and must be overruled to the extent they hold that the ordering authority must consider future earning capacity when determining the nature and amount of restitution under OCGA § 17-14-10. We also disapprove of the dicta in *Vaughn v. State*, 324 Ga. App. 289, 291, n.2 (750 SE2d 375) (2013), to the extent that it implies that a defendant's "future financial position"

14

that consideration of this factor is not required: "We find no law for the proposition that the court must determine in advance that the [juvenile's] net worth or financial resources projected over the intended years of repayment is mathematically sufficient

_____

is a required factor under the statute.

Further, we note that in *Turner v. State*, 312 Ga. App. 799 (720 SE2d 264) (2011), this Court also addressed whether the trial court considered all of the required factors in OCGA § 17-14-10 (a) (1)-(8) when it ordered restitution. Id. at 803 (1). And in the concluding paragraph of Division 1 of *Turner*, we noted that "[g]iven the above-referenced evidence and the actions and comments by the trial court, Turner's *argument* that the court failed to consider all of the required factors, including her then-current and future financial position, is wholly without merit," and that the "record clearly reflects the trial court's thoughtful consideration of the required factors." (Emphasis supplied.) Id. at 803 (1). Thus, in referencing Turner's "future financial position[,]" we merely reiterated the defendant's argument as she characterized it. See id. at 803 (1) ("Turner argues that when the trial court ordered the restitution payment, it erred by failing to consider . . . her current financial condition and future earning capacity. . . ."). Nothing in *Turner* holds or suggests that a trial court must consider a defendant's "future financial position." Indeed, we listed the current required factors in *Turner*, which do not include future earning capacity, and held only that the trial court properly considered those factors. Furthermore, although the trial court appears to have considered what the defendant could realistically pay per month in restitution going forward, OCGA § 17-14-10 (a) (8) gives a trial court broad discretion to consider any "factors which the [court] deems to be appropriate." In any event, to the extent *Turner* can be misconstrued as suggesting that trial courts must consider the future earning capacity of the defendant in ordering restitution, such an interpretation has no precedential value or utility.

15

to allow full payment of the amount of restitution ordered." (Citation and punctuation omitted.) *W. J. F.*, 302 Ga. App. at 363.[8]

Lastly, we are not persuaded by N. T.'s reliance on *Britt v. State*, 232 Ga. App. 780, 781 (2) (503 SE2d 653) (1998), and *Pruitt v. State*, 230 Ga. App. 334 (1) (496 SE2d 324) (1998). While we acknowledge that this Court vacated the restitution orders in both of those cases, we did so because nothing in the respective transcripts indicated that the ordering authorities considered the factors as required by the statute.[9] In this case, the transcript reveals just the opposite. Accordingly, "as OCGA

---

[8] N. T.'s claim that he "lacks the present and future ability to pay" the restitution amount is premature. As this Court reminded in *McMahon v. State*, 284 Ga. App. 192 (643 SE2d 236) (2007), — where we affirmed a restitution order despite the defendant's argument that he may be unable to pay —

> [s]hould [the defendant] be unable to pay, the protection of his constitutional rights will be governed by the principles in *Bearden v. Georgia*, 461 U. S. 660 [(103 SCt 2064, 76 LE2d 221)] (1983) (before revoking probation for failure to pay restitution, court must determine whether defendant had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist). See also *Hunt v. State*, 222 Ga. App. 66, 70 (3) [(473 SE2d 157)] (1996) (where restitution is a condition of probation, *Bearden* hearing on ability to pay not required until probation is about to be revoked for failure to pay).

*McMahon*, 284 Ga. App. at 194 (2).

[9] We note that at the time these cases were decided, future earning capacity was still a factor to be considered under the statute.

16

§ 17-14-5 (b) expressly authorizes restitution as a condition or limitation of the probation of delinquent or unruly juveniles, and as the nature and amount of restitution was supported by a preponderance of the evidence, we discern no error and affirm the juvenile court's order of restitution." *W. J. F.*, 302 Ga. App. at 363.

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur.*