**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 17, 2015**

# In the Court of Appeals of Georgia

A15A1201. MEDLEY v. MOSLEY.                                    DO-060

DOYLE, Chief Judge.

Venyke Medley appeals from the trial court's final order, which awarded Justan Mosley ("Mosley"), the father of her son, Justan, Jr. ("Justan"), primary physical custody of Justan, and the trial court's order on Mosley's petition for contempt or to compel, which awarded Mosley $2,580 in back child support for the period of time prior to the entry of a support order. Medley appeals, arguing that (1) Fulton County Superior Court's use of officers other than superior court judges in making custody decisions is unconstitutional; (2) the court's decision to grant an emergency motion to modify custody from Medley to Mosley was an abuse of discretion because Medley was not present at the conference on the motion; (3) the superior court abused its discretion because (a) there was insufficient evidence to show that permanently

giving Mosley primary custody was in Justan's best interests, and (b) there was insufficient evidence that Medley's failure to allow visitation with Mosley materially affected Justan's welfare or was in his best interests; and (4) the trial court erred by awarding back child support to Mosley because (a) it was erroneous to award the support for a period of time prior to entry of a support order, and (b) Medley's lack of income was not taken into account. We affirm in part, vacate in part, and remand the case for the reasons that follow.

The record shows that Mosley filed a legitimation action in Clayton County with regard to Justan, who was born in July 2008, and an order was entered in March 2012, which included a parenting plan awarding primary physical custody and support to Medley and visitation to Mosley. Thereafter, on July 9, 2013, Mosley filed the instant "Petition for Modification of Child Custody, Child Support, and Visitation" ("the Petition"), alleging that Medley had been denying him visitation and interfering with his parental rights since entry of the March 2012 order.

A 30-day status conference was scheduled for August 13, 2013, on which date Mosley filed a "Motion for Emergency Temporary Child Custody Hearing and Motion for Contempt" ("Emergency Petition"). At the conference, despite Medley's

2

absence,[1] the court[2] heard evidence related to Mosley's Emergency Petition. Based on Mosley's evidence, the court entered a Temporary Custody Order, awarding Mosley sole legal and physical custody, awarding Medley supervised visitation only if the parties could not agree on visitation, and suspending Mosley's child support requirement.[3]

In its order, the court found that in January 2013, Mosley had filed a motion for contempt in Clayton County, alleging that Medley had withheld visitation, and the parties reached a mediated agreement on April 23, 2013. Nevertheless, on April 25, Medley repudiated the agreement, and a hearing on the matter was scheduled for June 17, 2013, at which hearing Medley agreed to adhere to the April 23 settlement agreement. Immediately thereafter, however, Medley refused to allow Mosley his visitation under the agreement, and she also filed a temporary protective order ("TPO") against him, which was later dismissed on August 6, 2013, for lack of

---

[1] Medley claimed she did not believe her attendance was necessary because she believed service was improper.

[2] Magistrate Judge Margaret Dorsey was sitting by designation to hear the Emergency Petition.

[3] The court did not enter an order of support requiring Medley to make payments to Mosley.

evidence. On August 9, 2013,[4] despite Mosley arriving at a pre-arranged location to exchange Justan, Medley failed to appear, prompting Mosley to file the Emergency Petition.

On August 19, 2013, Medley filed her answer to the Petition, asking for the court to return custody to her, alleging that she had prevented Mosley from visiting with Justan because visits with Mosley disturbed him, leading Medley to seek psychological care for Justan from psychologist David Rush; Medley also claimed that Mosley was not paying child support as required. Medley also filed an emergency motion for a custody modification, a Rule 1000-4 Request to have all matters presided over by a superior court judge, and a motion for return of custody, alleging, among other things, that it was in the best interests of Justan to be returned to her.

On September 18, 2013, Medley moved for appointment of a guardian ad litem ("GAL") on the basis that Dr. Rush was concerned because Justan had described being spanked by Mosley and had drawn what Dr. Rush described as a "smoking apparatus but not a cigarette" after Justan's prior visits with Mosley; additionally, Medley alleged that Justan's former Pre-Kindergarten teacher reported that Justan had a difficult time concentrating after previously visiting with Mosley. Mosley, though

---

[4] This incident occurred after the instant Petition had been filed.

he did not agree that he had harmed the child, consented to appointment of a GAL. On November 11, 2013, a consent order appointing Jessie R. Altman as GAL was entered by a superior court judge.

A status conference was scheduled for October 2, 2013, before the court, but instead the parties mediated because Medley's Rule 1000-4 Request prevented a hearing before an official other than a superior court judge. The parties came to an agreement, entered as a consent order on October 18, which left primary physical custody with Mosley, granted Medley joint legal custody and visitation every second, third, and fourth weekend per month, and granted her specified parenting time over the approaching winter holidays. An amended order was entered on October 25, adding that custody exchanges would occur at a specified location.

On February 10, 2014, Mosley filed a motion to compel discovery, alleging that Medley had failed to respond to discovery he had filed in October 23, 2013. Medley responded, contending that she had provided responses and the motion for contempt should be denied. A consent agreement for child support was entered on May 13, 2014, stating that Medley would pay $250 per month to Mosley. Thereafter, Medley filed a domestic relations financial affidavit, and the parties were ordered to mediation before June 30, 2014.

On October 31, 2014, the superior court held a hearing and as a result of previous mediations, the parties had agreed on certain provisions, but they needed the court to decide (1) which parent would have school-year primary custody; (2) which parent would have summer session primary custody; and (3) various other issues. At the hearing, Medley testified that prior to the Clayton County contempt motion, she had begun limiting Justan's visits with Mosley because Justan was not acting like himself afterward and instead was crying and upset. Medley did not force Justan to go with Mosley when Justan started protesting to her that he wanted to stay with her instead; she admitted that this "was wrong," but at the time, she believed that something during the visits must have caused Justan to behave that way. Medley admitted that she registered Justan for basketball, and it was inconvenient for Mosley to attend games and practices because he would have to drive about 25-30 minutes. Medley also admitted that she had been charged with simple battery for behavior at a custody exchange with Mosley, and she was awaiting a hearing on the charge.

The GAL testified that her recommendation was for Mosley to have primary custody because Medley worked nights and Medley's mother was providing most of the care for Justan when Medley had custody. Altman stated that Medley admitted she denied visitation when Justan refused to go with Mosley, but Medley had learned that

6

is not acceptable. Finally, all Medley's negative allegations about Mosley, including allegations of drug use in front of Justan, were not supported by the GAL's visits and interactions with him and Justan.

After the hearing, on November 4, 2013, the trial court ordered joint legal and physical custody, but with Mosley having primary physical custody during the school year and Medley having the majority of the summer. The trial court specified parental decision making authority, off-custody visitation for each parent, locations for custody exchanges, directions for extracurricular activities and communications between the parents. The trial court awarded no child support per the parties' agreement, but ordered them to split the costs of uncovered medical expenses and extracurricular activities, and it ordered Mosley to maintain health insurance for Justan. On November 10, 2014, the trial court entered an order in response to Mosley's Contempt motion, ordering attorney fees and back child support in the amount of $2,580, which was half of Mosley's proven child-related expenses over the applicable time frame. This appeal followed.

1. As an initial matter, we note that although Medley enumerates six errors as stated above, her brief provides argument and citations of authority only as to four of those errors, which we address below, despite the fact that the argument section of her

brief is divided into only two sections. Pursuant to Court of Appeals Rule 25 (c) (2) any unsupported enumeration of error is deemed abandoned.[5]

2. Medley argues that the trial court abused its discretion by awarding primary physical custody to Mosley without a showing of how her failure to allow visitation with Mosley materially affected Justan's welfare or that the change was in Justan's best interests.[6]

> [A] trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. Furthermore, a trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest. And where there is any

---

[5] See *Murphy v. Murphy*, 330 Ga. App. 169, 172-173 (4) (767 SE2d 789) (2014). Medley's first enumeration that the use of judicial officers in making custody decisions is unconstitutional presents nothing for review because it was not ruled upon by the trial court. See *Ga. Board of Dentistry v. Pence*, 223 Ga. App. 603, 604 (1) (478 SE2d 437) (1996) (holding that an appellate court will not rule on a constitutional question "unless it clearly appears in the record that the trial court distinctly passed on the point") (citation and punctuation omitted); *Raskin v. Wallace*, 215 Ga. App. 603, 604 (1) (451 SE2d 485) (1994) (holding that if a trial court did not "distinctly pass or rule on" a constitutional issue, an assertion as to it on appeal "presents nothing for review") (citation and punctuation omitted).

[6] To the extent that Medley contends that the temporary order entered by the magistrate judge in August 2013 was erroneous because Medley was not at the hearing, she has not cited any authority to support this contention and is therefore abandoned. See Division 1, *supra*; Court of Appeals Rule 25 (c) (2).

evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion.[7]

In this case, we find no error in the temporary order modifying custody, or the ensuing orders resulting in Mosley having primary physical custody. The evidence before the judicial officer showed that Medley, in violation of numerous court orders and consent agreements, prevented Mosley from exercising visitation with Justan between December 2011 and August 2013. "As recently noted by our Supreme Court, the fact that a parent has interfered with the other parent's visitation supported the trial court's finding that it was more likely that the other parent will provide visitation and abide by the Court's Orders, and its conclusion that it was in the best interest of the child to modify custody."[8] Medley also often left Justan in his grandmother's custody rather than allowing him to visit with his father while she worked nights.[9]

---

[7] (Footnotes and punctuation omitted.) *Jackson v. Sanders*, 333 Ga. App. 554, 558-559 (5) (773 SE2d 835) (2015).

[8] (Punctuation omitted.) *Fifadara v. Goyal*, 318 Ga. App. 196, 201 (3) (733 SE2d 478) (2012), quoting *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012).

[9] See *Shotwell v. Filip*, 314 Ga. App. 93, 96-97 (1) (722 SE2d 906) (2012) (holding that mother's actions of allowing maternal grandmother rather than father to keep the child constituted material change in circumstances).

9

And during the time period between the temporary award of primary custody to Mosley and the hearing before the trial court, Justan was doing very well at school and was emotionally adjusted, which findings support the trial court's order continuing primary custody with Mosley.[10] Medley's behavior, including taking out an unsupported TPO against Mosley but then inviting him to her home for Justan's birthday party and committing an act to warrant a charge for simple battery, also supported the trial court's determination that Justan should remain in the primary physical custody of Mosley during the school year. Accordingly, we cannot say that the superior court erred by granting Mosley primary physical custody during the school year.

3. Medley also argues that the trial court erred by awarding child support for the period of time prior to entry of an order because the trial court incorrectly based its ruling on *Weaver v. Chester*,[11] which Medley contends applies only to putative fathers who fail to support their children. As explained in *Smith v. Carter*,[12] however, the requirement to provide child support extends to both mothers and fathers, and the

---

[10] See *Viskup*, 291 Ga. at 105.

[11] 195 Ga. App. 471 (393 SE2d 715) (1990).

[12] 305 Ga. App. 479 (699 SE2d 796) (2010).

10

custodial parent may seek back support for at most the actual expenses the parent provided during the time the noncustodial parent failed to pay.[13]

Despite Mosley's argument that the award is supported by the law, "in determining what portion of the amount actually expended must be born by the noncustodial parent, a trial court is required to follow the Child Support Guidelines, which would include at least a consideration of the custodial parent's income, the noncustodial parent's income, and other child support obligations of the parents."[14] Because the record does not reflect that the superior court applied the child support guidelines to the parties' incomes during the time period in question to support the Court's decision to award Mosley half his proven expenditures, we vacate the Order on Petition for Contempt and to Compel and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Phipps, P. J., and Boggs, J., concur.*

---

[13] See id. at 481-482 (2).

[14] Id. at 482 (2).

11