**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

November 25, 2024

# In the Court of Appeals of Georgia

A24A1774. GIBSON v. GIBSON.

MERCIER, Chief Judge.

Tyrese Gibson ("husband") and Samantha Gibson ("wife") were married on February 14, 2017, and they have a daughter, S. G., born in 2018. On September 21, 2020, wife petitioned for divorce. After the parties resolved certain issues, the case proceeded to a bench trial primarily on the questions of child support, spousal support, attorney fees, and expenses of litigation. The trial court entered a final judgment and decree of divorce, denying wife's claim for spousal support, but awarding her child support that incorporated a high-income deviation from the child support guidelines. Following a further hearing, the trial court granted wife's request for attorney fees and expenses. Husband appeals these and other rulings entered by the trial court. For reasons that follow, we affirm.

Viewed in the light most favorable to the trial court's rulings, see *Cousin v. Tubbs*, 353 Ga. App. 873, 873 (840 SE2d 85) (2020), the record shows that prior to their marriage, husband and wife executed a prenuptial agreement to "defin[e] their respective rights regarding their pre-marital and post-marital property and acquisitions, as well as support." The agreement addressed various issues, including the distribution of assets in the event the marriage terminated, each party's responsibility for debts and liabilities, income division, and limitations on spousal support. It also included an attorney fee provision requiring husband to pay legal fees and expenses incurred by wife during an uncontested divorce.

Issues regarding child custody and child support were excluded from the prenuptial agreement, which stated: "Nothing herein shall affect the determination of child support for any child born or adopted between the parties." The agreement contained an arbitration clause, by which the parties consented to arbitrate "any dispute under this [a]greement." And the parties agreed to waive their right to a jury trial with respect to any dispute regarding the agreement or the dissolution of marriage.

In her divorce petition, wife alleged that the prenuptial agreement resolved "all issues of equitable division of property and liabilities, alimony and attorney's fees[.]" She sought primary physical and joint legal custody of S. G., with parenting time to be established by a parenting plan, and asserted that husband "should be ordered to contribute to the care and maintenance of [S. G.] on a temporary and permanent basis." She also requested an award of attorney fees and litigation expenses, claiming that "the only issues being contested are ones of custody and child support." On the day wife filed her petition, she moved for a temporary hearing to establish, among other things, temporary support for S. G.

During the litigation, a dispute arose regarding the interpretation of the attorney fee provision in the prenuptial agreement, and, pursuant to the agreement's arbitration provision, wife asked the trial court to appoint an arbitrator to resolve the dispute. The trial court granted the motion, ordering the parties to arbitrate the dispute. Following an arbitration hearing, the arbitrator concluded that husband was responsible for all reasonable legal fees, costs, and expenses incurred by wife in the divorce proceeding, as well as all reasonable fees and costs of the arbitration

proceeding. The parties filed competing motions to confirm and vacate the arbitration award, and the trial court confirmed the award.

After discovery and resolution of many issues, the trial court held a final hearing to address, among other things, child support. The parties agreed that, given husband's high income, an upward deviation from the child support guidelines was appropriate, but they disputed the proper amount of the deviation. The trial evidence included extensive financial data, including husband's updated domestic relations financial affidavit reporting a gross monthly income of $275,132. Based on the financial evidence, as well as testimony from the parties, the trial court found that wife earned a monthly income (both gross and adjusted) of $7,880, and husband earned a gross monthly income of $275,000, with an adjusted monthly income of $264,310.

Concluding that a high-income deviation from the child support guidelines was appropriate under OCGA § 19-6-15 (b) (8) (A) (2023),[1] the trial court determined that husband should make monthly payments to wife in the amount of $10,690 for the support and maintenance of S. G. The court further ordered husband to pay wife a

---

[1] Although OCGA § 19-6-15 has been amended effective July 1, 2024, the trial court's 2023 divorce decree applies the statute in effect in 2023. For ease of discussion, and unless otherwise indicated, all references to OCGA § 19-6-15 will be to the version in effect in 2023.

lump sum of $163,093 to compensate her for the support of S. G. during the period between the filing of the divorce petition and the date of trial. The court denied wife's request for spousal support. And it reserved the issue of attorney fees and litigation expenses, noting that "the lone issue remaining for this Court's determination is the reasonableness of the fees incurred by Wife in the divorce action and the associated arbitration proceeding." The trial court later resolved the attorney fee issue, ordering husband to pay $399,152 to wife's attorneys in fees and expenses. We granted husband's application for discretionary review, and this appeal followed.

1. In two claims of error, husband argues that the trial court erred in awarding wife $10,690 in monthly child support. While husband conceded at trial that a high-income deviation was proper, he argued that his total monthly payment should be capped at $3,500. The trial court, however, agreed with wife that a $10,690 monthly support obligation was appropriate and in the best interests of S. G. Husband now challenges the awarded sum as an "excessively high income child support deviation."

The Georgia Schedule of Basic Child Support Obligations sets forth the presumptive amount of support required for a child based on the parents' combined adjusted monthly income. See OCGA § 19-6-15 (o); see also OCGA § 19-6-15 (a) (2)

5

("adjusted income" is "the determination of a parent's monthly income, calculated by deducting from that parent's monthly gross income one-half of the amount of any applicable self-employment taxes being paid by the parent, any preexisting order for current child support which is being paid by the parent, and any theoretical child support order for other qualified children, if allowed by the court."); OCGA § 19-6-15 (a) (19) ("'Presumptive amount of child support' means the basic child support obligation including health insurance and work related child care costs."). The highest combined adjusted income reflected in the schedule is $30,000 per month, for which the presumptive monthly child support obligation is $2,236 for one child. See OCGA § 19-6-15 (o). The child support guidelines, however, permit deviations from the presumptive amount of monthly child support, including in situations involving high income. See OCGA § 19-6-15 (b) (8) (A).

When a divorce case involves minor children, a trial court must include in the final judgment and decree of divorce

> written findings of fact as to whether one or more of the deviations allowed under this Code section are applicable, and if one or more such deviations are applicable as determined by the court or the jury, the written findings of fact shall further set forth:

(i) The reasons the court or the jury deviated from the presumptive amount of child support;

(ii) The amount of child support that would have been required under this Code section if the presumptive amount of child support had not been rebutted; and

(iii) A finding that states how the court's or the jury's application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support and how the best interest of the child who is subject to the child support determination is served by deviation from the presumptive amount of child support[.]

OCGA § 19-6-15 (c) (2) (E).

The fact-finder — here, the trial court — exercises its discretion in determining (1) whether special circumstances render the presumptive amount of child support inadequate, and (2) whether any deviation from that presumptive amount serves the best interests of the child. See *Cousin*, 353 Ga. App. at 887 (3) (b). Moreover,

in the absence of any mathematical formula, fact-finders are given a wide latitude in fixing the amount of . . . child support, and to this end they are to use their experience as enlightened persons in judging the amount necessary for support under the evidence as disclosed by the record and all the facts and circumstances of the case.

Id. (citation, punctuation, and emphasis omitted). Factual findings regarding the upward modification of child support will be upheld if supported by any evidence. See *Johnson v. Johnson*, 358 Ga. App. 638, 639 (856 SE2d 17) (2021).

The trial court determined that, pursuant to OCGA § 19-6-15 (c) (2) (E) (ii), husband's presumptive monthly child support obligation was $2,169.34. As noted above, however, the parties agreed, and the trial court found, that a high-income deviation was appropriate based on husband's "extraordinarily high" adjusted monthly income, which was almost nine times the $30,000 maximum accounted for in the statutory child support schedule and more than thirty-three times wife's monthly income. The question thus became the amount of such deviation.

A primary purpose of the child support guidelines — and the provisions allowing deviations from the presumptive child support produced by those guidelines — is "to achieve the state policy of affording to children of unmarried parents, to the extent possible, the same economic standard of living enjoyed by children living in intact families consisting of parents with similar financial means." OCGA § 19-6-15 (c) (1); see also *Fladger v. Fladger*, 296 Ga. 145, 148 (2) (765 SE2d 354) (2014). Here, the evidence established the parties respective incomes, including husband's very high

monthly earnings. And it showed that although wife had not worked during the marriage, she took a full time job and pursued three "side hustles" to make money following the parties' separation. She testified that after moving out of the marital home in Atlanta, she lived in rental properties with S. G., but wanted to purchase a home near Atlanta to avoid "moving from place to place" and provide more stability for S. G. Despite earning approximately $96,000 per year, wife asserted that she could not afford to purchase the 2,500 square foot homes she had looked at closer to the city, which cost between $300,000 and $500,000, with mortgage payments of $3,000 to $3,500 per month.

The trial court deviated upward from the presumptive child support amount by approximately $8,520, ordering husband to pay total monthly child support of $10,690. The court found that the specified deviation would serve S. G.'s best interests by permitting her to share in her father's high income and maintain, to some extent, her pre-divorce standard of living; helping wife purchase a home for herself and S. G.; allowing wife to spend more time with S. G. by not having to work as many hours; and enabling wife to pay her portion (50 percent, as agreed by the parties) of

any private school fees for S. G., "thus paving the way" for S. G. to attend private school.

Husband challenges the high-income deviation on appeal, characterizing it as excessive and based upon the needs and desires of wife, rather than the needs and best interests of S. G. Again, however, a trial court exercises its discretion in assessing whether a high-income deviation is appropriate, and it has wide latitude in determining the amount of such deviation. See *Cousin*, 353 Ga. App. at 887 (3) (b). Although husband argues that the $8,520 upward deviation is unconscionable, the total monthly award ($10,690) is only 4 percent of husband's adjusted monthly income ($264,310). Compare id. at 890-891 (3) (b) (high-income deviation resulting in a child support obligation for father equaling 18 percent of his monthly income deemed excessive); see also OCGA § 19-6-15 (o) (maximum presumptive child support for one child at combined adjusted monthly income of $30,000 is $2,236, which is 7.45 percent of adjusted income). There is no mathematical formula for calculating an upward deviation. See *Cousin*, 353 Ga. App. at 887 (3) (b). But given husband's very high monthly income, we cannot find the award excessive.

Moreover, the trial court's order properly "connect[s] the dots to explain . . . that applying the presumptive amount of child support would be inappropriate here[.]" *Fladger*, 296 Ga. at 149 (2). The order states that S. G.'s best interests would benefit from wife having the ability to buy stable housing closer to Atlanta, cut back on her work hours, and pay her share of any private school fees, opportunities likely only available with the high income deviation. It further found husband's presumptive child support amount ($2,169.34) inappropriate, noting that a support award at that level would substantially decrease S. G.'s standard of living, not allow S. G. to share in the economic benefit of husband's income, and leave wife unable to pay her share of private school fees. Despite husband's claim to the contrary, the trial court's written order sufficiently explains the reasons for the deviation. See OCGA § 19-6-15 (c) (2) (E) (i) & (iii) (2023); compare *Fladger*, 296 Ga. at 149 (2) (reversing child support award containing a high-income deviation where trial court failed to make written findings that set forth how the presumptive child support amount was inappropriate and how a high-income deviation would serve the child's best interests).

Finally, husband asserts that the trial court improperly awarded "a specific deviation amount in order to achieve a specific result." The trial court ordered

husband to pay $10,690 in monthly child support, the amount wife requested and that also equaled the monthly support husband paid for his older child in California. Citing *Parker v. Parker*, 293 Ga. 300, 307 (3) (745 SE2d 605) (2013), husband argues that the trial court manipulated the child support to reach the result wife wanted. We disagree.

In *Parker*, the trial court improperly used erroneous and inflated numbers to make "an award of child support outside the parameters of the child support worksheet in order to achieve a specific result[.]" 292 Ga. at 307 (3). Husband has not shown that any such manipulation occurred here. Rather, the trial court considered the parties' respective incomes, financial circumstances, S. G.'s housing and education needs, and other factors in determining the child support award. The award is not excessive, the evidence supports the trial court's findings, and husband has not shown any abuse of discretion.

2. Next, husband challenges the trial court's lump sum award of $163,093 in back child support. According to husband, the award deprived him of due process because he had no notice before trial that wife was requesting a retroactive child support payment. He further argues that the trial court improperly based the lump

sum award on the parties' incomes, rather than S. G.'s actual expenses during the relevant period. Again, we disagree.

At the bench trial, wife requested a lump sum "catch up" child support payment covering the period between the filing of the divorce petition and entry of the final divorce decree. Husband objected to this request, asserting that such award was not warranted because husband had "been making several different expenditures on behalf of [S. G.]." He did not, however, object on due process grounds or argue that he received no notice of the claim. He thus has not preserved this argument for review. See *Womack v. Johnson*, 328 Ga. App. 543, 544 (1) (762 SE2d 428) (2014) ("In order to preserve a point of error for the consideration of an appellate court, counsel must take exception to the alleged error at the *earliest possible opportunity* in the progress of the case by a proper objection made a part of the record.") (citation and punctuation omitted; emphasis in original).

Moreover, we find no merit in husband's argument that the trial court erred in calculating the lump sum amount. As we have explained:

> [W]here a divorce action is pending, and a spouse subsequently seeks temporary support for a minor child, the trial court may consider and award such support covering the period from the time the divorce is filed

13

until a temporary order or final hearing is held, and it may exercise its discretion in determining the amount of that support, which will not be disturbed absent an abuse of that discretion.

*Daniel v. Daniel*, 358 Ga. App. 880, 893 (3) (856 SE2d 452) (2021).

After the divorce petition was filed, husband voluntarily and unilaterally began paying temporary child support in the amount of $2,236, the top level of presumptive child support in OCGA § 19-6-15 (o). Acknowledging these payments, but asserting that they failed to include a high-income deviation or account for daycare expenses she had fully paid, wife sought "catch up" child support retroactive to the filing of the petition. The trial court noted that, although wife had requested a temporary hearing to establish temporary support for S. G., a hearing was never held. It then found that wife was entitled to a lump sum of child support in the amount of $209,093, which incorporated, over a 23-month period, the monthly difference between $10,690 (the support ordered by the trial court in the final decree) and $2,236 (the amount voluntarily paid by husband once the divorce petition was filed), plus 50 percent of the daycare costs. After offsetting that amount by $46,000 to account for expenditures husband made for wife's vehicle, the trial court ordered husband to pay wife a lump sum of $163,093.

Citing *Day v. Mason*, 357 Ga. App. 836 (851 SE2d 825) (2020), and *Medley v. Mosley*, 334 Ga. App. 589 (780 SE2d 31) (2015), husband argues that any award of back child support was limited to actual expenses incurred by wife for S. G. during the period at issue. Both *Day* and *Medley*, however, involved unmarried parents and the award of reasonable and necessary past expenditures under a statutory provision "applicable between parents who are not married, although not between parents who are married." *Weaver v. Chester*, 195 Ga. App. 471, 473 (393 SE2d 715) (1990); see also *Day*, 357 Ga. App. at 839 (1) (referencing *Weaver*); *Mosley*, 334 Ga. App. at 594 (3) (referencing *Weaver*). Husband has offered no basis for restricting the trial court's discretion to actual expenses in this case. And he did not raise this "expense" argument at trial or object on any ground other than that the lump sum requested by wife was not "warranted[.]" See *Talmadge v. Elson Properties*, 279 Ga. 268, 269 (1) n.3 (612 SE2d 780) (2005) ("[T]o preserve an objection upon a specific point, the objection must be entered timely on the record upon that specific ground[.]").

Husband has not demonstrated that the trial court abused its discretion in ordering him to pay $163,093 in lump sum child support. See *Daniel*, 358 Ga. App. at 893 (3). Accordingly, this claim of error lacks merit.

3. Husband asserts that the trial court erred in confirming the arbitration award and in denying his renewed motion to vacate the award. We find no basis for reversal.

The prenuptial agreement provided as follows with respect to attorney fees in the event of divorce:

**XIX. LEGAL FEES.**

[Husband] will pay the necessary and reasonable legal fees, costs and expenses incurred by [wife] if the divorce is uncontested. If [wife] challenges or disputes the validity of this Agreement or any provision therein, or if the divorce is otherwise contested (other than child support), she shall be responsible for all her legal fees, costs and expenses with respect to the divorce.

During the divorce litigation, a dispute arose regarding this provision, with husband asserting that wife had contested the divorce by seeking spousal support. An arbitrator was appointed to resolve the issue pursuant to the agreement's arbitration provision. After reviewing Paragraph XIX and wife's claims in the divorce petition, the arbitrator found that (a) wife had not disputed the validity or enforceability of the prenuptial agreement; (b) wife had not contested the divorce; (c) wife's request for limited spousal support pursuant to the agreement "is not contesting the divorce or

16

creating a controversy"; (d) wife had complied with all terms of the agreement; and (e) although disputes remained regarding custody and child support, those issues were "separate from the divorce and not subject to the terms of the [a]greement."

(a) The trial court confirmed the arbitration award over husband's objection and motion to vacate. We find no error. Pursuant to OCGA § 9-9-12, a trial court "shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified by the court[.]" An award may be vacated only if the contesting party proves that he was prejudiced by one of five statutory grounds. See OCGA § 9-9-13 (b); *Airtab, Inc. v. Limbach Co.*, 295 Ga. App. 720, 721 (673 SE2d 69) (2009). And "we will not reverse an order confirming an award unless the appellant demonstrates that a statutory ground exists." Id.

On appeal, husband claims broadly that the arbitrator's findings were premature, that the arbitrator manifestly disregarded the law, and that the arbitrator exceeded her authority. It is true that manifest disregard of the law and overstepping of authority are statutory grounds for vacating an arbitration award. See OCGA § 9-9-13 (b) (3) & (5). With respect to this claim of error, however, husband has not provided any supporting record references, citation of authority, or argument as to

how the arbitrator acted outside of her authority or disregarded the law. Instead, he refers us, without further discussion, to "the facts and arguments" in several motions and briefs filed in the trial court.

Parties cannot simply "incorporate" trial court briefing into their appellate argument, and "we decline to look in the record for matters which should have been set forth in the [appellate] brief." *Clarke v. Dye-Master Group*, 372 Ga. App. 376, 382 (3) (903 SE2d 828) (2024) (citation and punctuation omitted); see also *Chapman v. State*, 290 Ga. 631, 633 (2) (724 SE2d 391) (2012) ("[C]laims not pursued by specific legal argument [on appeal] are deemed to have been abandoned."). Because husband failed to support his enumerated error with citation of authority and record references, it is deemed abandoned. See Court of Appeals Rule 25 (d) (1); *Sadlowski v. Beacon Mgmt. Svcs.*, 348 Ga. App. 585, 589 (1) (824 SE2d 42) (2019). And even if no abandonment occurred, he has not demonstrated (beyond simply stating) that a statutory ground for vacating the arbitration award exists. See *Airtab, Inc.*, 295 Ga. App. at 721.

(b) Husband also argues that the trial court erred in denying his renewed motion to vacate the arbitration award, asserting that wife "perpetrated a fraud upon the court

by misrepresenting to the arbitrator" that she was not contesting the validity and enforceability of the prenuptial agreement.[2] (Emphasis omitted). See OCGA § 9-9-13 (b) (1) (statutory grounds for vacating an arbitration award include "[c]orruption, fraud, or misconduct in procuring the award"). Once again, however, husband cites us generally to the "facts and arguments" in various motions, briefs, and hearing transcripts filed in the trial court. We will not cull these materials for him. See *Clarke*, 372 Ga. App. at 382 (3).

The record further shows that husband did not raise fraud as a basis for his renewed motion to vacate the arbitration award below. Rather, he argued that the arbitrator manifestly disregarded the law and facts of the case by entering a premature and erroneous award. We will not review an argument raised for the first time on appeal. See *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 90 (3) (764 SE2d 398) (2014) ("arguments raised for the first time on appeal are deemed to be waived"); *Phillips v.*

---

[2] Husband's fraud allegation apparently focuses on wife's post-arbitration request for alimony and demand (later withdrawn) for a jury trial "on all issues so triable." According to husband, wife waived any claim to spousal support and her right to a jury trial in the prenuptial agreement. The agreement, however, explicitly permits wife to seek limited spousal support under specified terms. And although the agreement includes a jury trial waiver with respect to dissolution of the marriage, the agreement does not include a waiver regarding the determination of child support.

19

*Phillips*, 347 Ga. App. 524, 533 (6) (a) (820 SE2d 158) (2018) ("[A]s a general rule, this Court does not consider arguments raised for the first time on appeal.").

4. Paragraph 40 of the divorce decree provides: "[I]n the event of any appeal filed by either party related to this Final Judgment and Decree of Divorce, this Order shall become the Temporary Order of this Court until such time as any remittitur is returned by the Court of Appeal[s]." Husband moved to stay enforcement of this provision, as well as the decree's child support requirements, pending resolution of his appeal efforts. The trial court denied the motion. Husband now enumerates this denial as error, asserting that a temporary order (which the final decree became once he filed his notice of appeal) cannot include an award of lump sum child support or attorney fees. He further argues that because the high-income deviation was "excessive," that portion of the monthly child support award should have been suspended during his appeal.

We find no error. In Division 1, we rejected husband's claim that the trial court's high-income deviation was excessive. Furthermore, the divorce decree did not include an award of attorney fees. The decree reserved the attorney fee issue, which was resolved following a subsequent hearing. The attorney fee award, therefore, was

20

not part of the temporary order created by paragraph 40 of the divorce decree. Finally, husband has offered no authority for his claim that a temporary order cannot include a lump sum child support award. And even if a stay should have been granted as to the lump sum award, we affirmed that award in Division 2. Husband has not shown how any error in the trial court's refusal to stay enforcement of the award harmed him.[3] See *Boyd v. JohnGalt Holdings*, 294 Ga. 640, 648 (6) (755 SE2d 675) (2014) ("The burden is on the appellant to show harm as well as error.") (citation and punctuation omitted).

5. Husband asserts that the trial court erred in finding him in contempt while his motion for new trial was pending. It is unclear what contempt ruling this enumerated error involves. He states, however, that he voluntarily abandons this claim unless we reverse the trial court's high-income child support deviation. We affirmed the high-income deviation in Division 1. This claim of error, therefore, has been abandoned.

---

[3] Although husband asserts in his appellate brief that "this Court should reverse any findings of contempt regarding [child support] issues while the case is on appeal," he has pointed to no evidence that a contempt order has been entered during the appeal proceedings with respect to any support obligation.

6. Husband raises two challenges to the award of attorney fees to wife, which the trial court made pursuant to Paragraph XIX of the prenuptial agreement. Neither has merit.

(a) First, husband argues that wife was not entitled to recover attorney fees under Paragraph XIX because she contested the divorce and the validity of the prenuptial agreement. The arbitrator, however, resolved these issues against husband, and the trial court confirmed the arbitration finding. As discussed in Division 3, husband has not demonstrated that the trial court erred in this regard. And he has cited no authority precluding the trial court from awarding fees pursuant to Paragraph XIX. See *Merrill v. Lee*, 301 Ga. 34, 36 (2) (799 SE2d 169) (2017) ("There is no public policy against contracting for the recovery of attorney fees.") (citation and punctuation omitted). A fee award was authorized.

(b) Husband also challenges the amount of fees awarded wife, characterizing the award as excessive and unconscionable. In his one-paragraph discussion relating to this claim of error, husband asserts simply that a $400,000 fee award for an uncontested divorce necessarily amounts to a "gross abuse of discretion." We disagree.

Although the divorce itself was uncontested, issues relating to the support and care of S. G. fell outside of the prenuptial agreement and were fiercely disputed. In determining wife's necessary and reasonable legal fees, costs, and expenses under Paragraph XIX, the trial court considered, among other things, the complexity of the financial issues involved in the case, the parties' discovery, the motions and responses filed, the arbitration expenses, and the legal services provided by wife's counsel. Based on this analysis, the trial court awarded fees in an amount that was less than that requested by wife. Husband has not shown — or even argued — that any particular fee or expense reflected in the invoices submitted by wife's counsel was unreasonable. And he offers no evidence to support his claim that counsel "r[a]n up wife's legal fees because they saw a huge ***pot of gold*** at the end of the rainbow." (Emphasis in original) The trial court did not abuse its discretion in awarding fees to wife. See *Jones v. Unified Govt. of Athens-Clarke County*, 312 Ga. App. 214, 222 (2) (c) n.30 (718 SE2d 74) (2011) ("[A] trial court's determination as to what fees are reasonable and necessary must be sustained unless the trial court abused its discretion[.]") (citation and punctuation omitted).

7. The trial court denied husband's request for an award of attorney fees pursuant to OCGA § 9-15-14 (b). He appeals that ruling, asserting that wife unnecessarily expanded the proceedings by "filing numerous frivolous motions and engaging in other conduct." To support this claim, and without further explanation, argument, or specificity, husband points us generally to hundreds of pages of documents in the record. He has not preserved this claim of error for review. See *Clarke*, 372 Ga. App. at 382 (3).

8. Husband argues that the trial court erred in requiring him to pay the costs of a special master appointed by the trial court to resolve discovery and related contempt issues. The trial court found husband responsible for all special master fees pursuant to Paragraph XIX of the prenuptial agreement. According to husband, this finding was improper because (a) wife's decision to contest the divorce removed the litigation from Paragraph XIX; and (b) although the final decree reserved for later determination the issue of attorney fees and litigation expenses, it did not reserve the question of who was responsible for paying the special master fees.

As discussed in Division 3, the arbitrator determined that Paragraph XIX applied here, and husband has not demonstrated that the trial court erred in

24

confirming that determination. Paragraph XIX explicitly obligates husband to pay legal fees, costs, and expenses incurred by wife during the divorce proceeding. We fail to see — and husband has not explained — how costs for a special master appointed to resolve discovery and related contempt issues arising in the divorce proceeding fall outside of this provision. See *Interfinancial Midtown v. Choate Constr. Co.*, 343 Ga. App. 793, 806 (3) (a) (806 SE2d 255) (2017) ("[F]ees of a special master or auditor appointed by the superior court in a case such as this should be considered a cost or expense of litigation.") (physical precedent only).

Moreover, although husband asserts that wife failed to request payment of these costs within 30 days after entry of the final decree as required, the record shows otherwise. Well before the final decree was entered, wife petitioned the trial court to require that husband pay all costs associated with the special master. We also disagree with husband's assertion that issues surrounding payment of these fees were not "reserved" in the final decree. On the contrary, the decree explicitly reserved for later determination wife's request for litigation expenses pursuant to Paragraph XIX of the

prenuptial agreement, which, wife claimed below, included the special master fees.

This enumerated error offers no basis for reversal.

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur.*